IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WALTER STEPHEN JACKSON, et al.,

    Plaintiffs,

vs.                                                          No. CIV 87-839 JP/LCS

LOS LUNAS CENTER FOR PERSONS
WITH DEVELOPMENT DISABILITIES, et al.,

    Defendants,

and

THE ARC OF NEW MEXICO,

    Intervenor,

and

MARY TERRAZAS, et al.,

    Intervenors pro se.

MEMORANDUM OPINION AND ORDER

On August 1, 2000 Defendants filed a pleading entitled "Motion for a Protective Order or in the Alternative for Dismissal and Expedited Consideration." Doc. No. 1204. On September 6, 2000 a hearing was held on several pending motions, including Defendants' August 1, 2000 motion. At the hearing, as stated on the record and memorialized in an Order filed the next day, I denied Defendants' motion to the extent it sought (1) dismissal of the case, (2) exclusion of Mr. Cubra, Ms. Miller, and Ms. Sanders as counsel, and (3) imposition of firewalls on Mr. Cubra, the Protection and Advocacy System attorneys, and Sanders & Westbrook, P.C. I then requested that the parties collaborate on drafting an order that would resolve the remainder of Defendants' motion for a protective order.

Having been advised that the parties were unable resolve the remainder of Defendants' motion for a protective order, I referred the matter to United States Magistrate Judge Smith. On March 20, 2001 Magistrate Judge Smith held a hearing, at the conclusion of which he asked counsel to submit drafts of a proposed protective order. After considering the submissions, Magistrate Judge Smith on April 9, 2001 filed a Protective Order, disposing of Defendants' motion.

On April 19, 2001 Defendants filed a pleading entitled "Objections to the Protective Order Entered by Magistrate Judge Leslie C. Smith on April 9, 2001, and Motion for Reconsideration of the Order of September 7, 2000." Defendants again requested expedited consideration.[1] Briefing was completed on July 2, 2001.

### Objections to Magistrate Judge Smith's April 9, 2001 Order

I must defer to the Magistrate Judge's decision unless it is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); Hutchinson v. Pfeil, 105 F.3d 562, 566 (10th Cir. 1997). To overturn the Magistrate Judge's decision under Rule 72(a), I must have a "definite and firm conviction that a mistake has been committed." Ocelot Oil Corp. v. Sparrow Indus., 847 F.2d 1458, 1464 (10th Cir. 1998). "To be clearly erroneous, a decision must strike [the court] as more than just maybe or probably wrong; it must . . . strike [the court] as wrong with the force of a five-week old, unrefrigerated dead fish." Parts & Elec. Motors, Inc. v. Sterling Elec., Inc., 866 F.2d 228, 233 (7th Cir. 1988).

---

[1] In December 2000 Defendants informed the Court that they contemplated moving for reconsideration of the September 7, 2000 Order, although they did not do so until four months later. No reason is given as to why consideration must now be expedited and the Court has not discerned on its own the sudden urgency.

Defendants lodge eight separate objections to Magistrate Judge Smith's April 9, 2001 Order.

**1.      Findings**

Defendants object that "the Protective Order made no findings" upon which it is based. Mot. at 1. Defendants have not called to the Court's attention any authority for the proposition that the Magistrate Judge should have made findings of fact or law, or that such findings should have been recounted in the resulting Protective Order. To the contrary, the Tenth Circuit has held that a Magistrate Judge is not obligated to give litigants notice of the standards which he employs in analyzing a motion. Koetting v. Noble County Bd. of County Comm'rs, No. 00-6146, 2001 U.S. App. LEXIS 7920, at *8 (10th Cir. Apr. 30, 2001). Accordingly, the Magistrate Judge did not err in issuing the April 9, 2001 Protective Order without findings.

**2.      Federal Rule of Evidence 408**

Defendants object that the Magistrate Judge did not order "communications and documents" protected under Fed. R. Evid. 408. Doc. No. 1268 at 2. In their supporting brief Defendants do not cite any relevant case law. Even though their position is that this is a novel case, Defendants could nonetheless, for example, analogize to cases analyzing Rule 408 or draw on the history which led to its promulgation. At the very least Defendants could mention Rule 408 in their brief. In fact, they do none of this. Instead, the argument portion of their brief (Doc. No. 1268 at 8-12), which tracks the eight numbered objections in their pleading entitled "Objections," Doc. No. 1268 at 1-3, omits any reference to objection number 2 concerning Rule 408. This is not the way to persuade the Court that the Magistrate Judge erred. Accordingly, Defendants' objection with respect to Rule 408 will be denied.

In the alternative, Defendants' argument that the Magistrate Judge erred in not applying Rule 408 to protect all communications and documents made in the course of implementing the JSD, Doc. No. 1205 at 3, will be denied as to its merits. Judge Smith considered the possibility of applying Rule 408, 3/20/01 Tr. at 13, 29, and implicitly rejected it. His concern was that making the suggested ruling in this case, i.e., ordering that Rule 408 "protects" communications and documents, would impermissibly impinge on evidentiary questions in other cases. 3/20/01 Tr. at 13-14. Indeed, I expressed the same reservation at the hearing on September 6, 2000. 9/6/00 Tr. at 21-22. Defendants' present Rule 408 argument, or lack thereof, has not diminished this issue. Nothing in Judge Smith's order bars the application of Rule 408 in the place where it was intended to apply: the cases in which the material which Defendants believe is "protected" is sought to be introduced into evidence, whether this case or another.

Defendants seem to contend that an order in this case prohibiting the use in other cases of "communications and documents" is appropriate because such an order would, like Rule 408, promote frank and open case settlement discussions. Defendants' premise is flawed. This case is not in "settlement" (to use Defendants' term) or arguably even "compromise negotiations" (to use Rule 408's term). Defendants are not required merely to consider making certain concessions in exchange for Plaintiffs' withdrawal of the lawsuit, as would be the situation at a court-coordinated settlement conference at the appellate level or elsewhere. Instead, Defendants are obligated, under the JSD, to convey information and to make records and the like available to opposing counsel. JSD ¶¶ 41-42. While the parties crafted the JSD, it is in fact a Court Order which I have previously described as the "functional equivalent of a consent judgment." Doc.

4

No. 1132 at 5 n.1.[2]  Defendants' disinclination to comply with this Court Order is understood but irrelevant.

Finally, the Protective Order does contain mechanisms for protecting communications and documents.  Doc. No. 1248 at 2-5.  Accordingly, Judge Smith's consideration of Rule 408 was not only not erroneous, but was entirely appropriate.

**3.    Paragraph I(A)**

Defendants object to paragraph I(A) of the Protective Order as "creat[ing] an exception that renders any restriction entirely illusory."  Doc. No. 1268 at 2.  Paragraph I(A) is a follows.

> This Order applies only to limiting the use of documents or other information obtained in this case and used or sought to be used in a separate lawsuit brought in New Mexico against the same defendants named herein, but not including proceedings in which formal discovery is not available, such as individual administrative hearings or appeals therefrom.

In their brief in support, Defendants do not make an argument in support of objection number 3 or offer any explanation as to how the exception in paragraph I(A) "renders any restriction illusory."  In other words, Defendants have not persuaded the Court that the Magistrate Judge erred.  Accordingly, Defendants' objection with respect to Paragraph I(A) will be denied.

**4.    Paragraph IV(A)**

Defendants object to paragraph IV(A) of the Protective Order "in that it fails to protect the Defendants' court approved experts and the Community Monitor from being used by the Plaintiffs at Defendants' expense for purposes other than concluding the Jackson litigation."

---

[2] In distinguishing the JSD from "a simple 'settlement' agreement," Defendants previously described it as "negotiated with all the 'freedom' of anyone with the legal equivalent of a gun loaded and cocked to the head."  Doc. No. 1119 at 2-3.  While the imagery is extreme, Defendants clearly have for some time felt motivated by something other than the free spirit of compromise which drives Rule 408.

Doc. No. 1268 at 2.  (Defendants had previously requested that Plaintiffs and Intervenors be enjoined from "using" the internal compliance monitor and "any other expert witness required by the JSD" in any other case.  Doc. No. 1204 at 9.)  Paragraph IV(A) is as follows:

> Nothing in this Order shall be construed to bar a litigant in a separate lawsuit from seeking to obtain the testimony, whether in discovery, in any pre-trial proceeding, or at trial, from individuals jointly selected to assist the parties in this case in implementing the JSD, such as the Internal [sic] Monitor, the Community Monitor, and consultants identified in paragraph 29 of the JSD, or any other consultant retained to assist in implementing the Plan of Action in this case.  Issues which may arise in obtaining this testimony, or portions thereof, (whether at deposition or at trial) shall be resolved in that lawsuit.  If a litigant plans to seek the use of written materials or the testimony of a witness only at trial, reasonable notice shall be provided thereof to all parties well prior to trial.

Paragraph 29 of the JSD identifies four positions:  community monitor, internal compliance monitor, employment consultant, and assistive technology consultant.  The individuals who fill these positions are "retain[ed]" by Defendants.  JSD ¶ 29.  Replacements are to be selected jointly by all parties.  Id.

There are two problems with Defendants' objection.  The first problem is the same as that already discussed with respect to documents in this case:  the impropriety of making in this case a ruling which is really nothing more than an evidentiary ruling in other cases.  I recognize that Defendants are uncomfortable with the prospect that the monitors and consultants might be called to testify in other cases about illegal conduct of which they become aware in the course of disengagement.  But the Protective Order which Judge Smith entered adequately takes this scenario into account by permitting Defendants to raise objections in the cases in which the proposed testimony arises.

The second problem has to do with Defendants' characterization of the positions identified in paragraph 29 of the JSD.  The two monitors and the two consultants identified in

paragraph 29 of the JSD may be paid by the State, but they are not Defendants' expert witnesses. As their titles imply, they monitor conditions and make recommendations with respect to disengagement for everyone, including Plaintiffs, Intervenors, and the Court, not just for Defendants. As such, they are more independent than an "expert witness" as that term is used in, for example, Federal Rule of Civil Procedure 26. To illustrate, Defendants argued with respect to the internal compliance monitor that "it is obvious that she is the Defendants' expert in Jackson and will be the Defendants' expert witness should any of the disengagement process require Court resolution through contested motions." Doc. No. 1205 at 4. Soon after, the parties presented the Court with contested motions for disengagement. The community monitor--who in Defendants' view is as much their expert as the internal compliance monitor--had certified Defendants as being in compliance with certain service goals. Attachments to Doc. Nos. 1230-1232, 1234. But when Defendants moved for disengagement as to those service goals and Plaintiffs contested the motion, the community monitor withdrew her certifications and purported to express no opinion on whether Defendants' had met the goals, Doc. No. 1239, even as Defendants persisted in the opinion that they had. This is not how a party's expert witness would behave.

And even if the four individuals described in paragraph 29 of the JSD were Defendants' experts, Defendants would need to demonstrate that it was objectively reasonable for them to believe that a confidential relationship existed which would be impaired by testifying for opposing counsel in another case. English Feedlot, Inc. v. Norden Laboratories, Inc., 833 F. Supp. 1498, 1501-02 (D. Colo. 1993). Defendants have not made this showing or even discussed the standard.

Accordingly, Judge Smith did not err in imposing paragraph IV(A).

**5.      Paragraph II(B)(2)**

Defendants object to paragraph II(B)(2) as creating a "procedural imbalance" in Plaintiffs' favor. Doc. No. 1269 at 10. Section II(B), in its entirety, is as follows.

> 1. Documents produced by any party which that party considers to be privileged and subject to this Protective Order shall be designated by stamping the word "Privileged" on the face of the document. Such documents also shall be numbered for identification purposes. Alternatively, any party claiming a privilege may avail themselves of Rule 26(c)(5) [sic] and produce a privilege log as described therein.

> 2. Any party may apply to the Court to challenge, at any time, the propriety of any "Privileged" designation. The burden of establishing the propriety of the designation shall be on the party who has so designated the document. If a party wishes to challenge a designation, that party shall give written notice to the party who has made the designation, identifying with specificity the documents that the objecting party contends are not entitled to such protection. Within twenty (20) days after being so notified, or such additional time upon which the parties may agree or which the Court may allow, the party who has requested the designation shall move for a determination of whether such designated documents shall continue to be deemed "Privileged" and subject to this Order. The Motion so filed shall maintain to [sic] confidentiality of the material [sic] The failure to move within the allotted period of time, including any extensions, shall constitute a waiver of the "Privileged" designation. The parties shall continue to treat any document that is the subject of any such motion in accordance with this Order until the Court rules on such motion.

> 3. If a party does not produce in a separate lawsuit any document properly designated herein as "Privileged" and subject to this Protective Order, this Order shall not preclude the requesting party in that separate lawsuit, or their counsel, from revealing knowledge of the existence and location of the document in conjunction with any motion to compel production of such documents in that separate lawsuit. If plaintiffs' or intervenor's counsel seek to use in any manner in a separate lawsuit documents appropriately designated as privileged under this Order, said counsel must pursue standard discovery procedures in that separate lawsuit with regard to such documents.

Defendants describe the procedural imbalance as the process by which the "Privileged" designation is challenged, i.e., "by letter without formal use of discovery mechanisms or good faith statement of any reason for the challenge." Doc. No. 1269 at 10. Defendants then assert

8

that "the issue of whether the Plaintiffs get the discovery is not the point. It is the use of the discovered material in other litigation that is the issue here." Id. Defendants conclude that "any correspondence at any time" might launch a discovery battle where none is necessary to conclude this case. Id.[3]

I agree with Defendants about what is at issue (use of material in other litigation), although I would not foreclose the possibility that disclosure of documents in this case might be the subject of dispute too (hence the provision incorporating Rule 26(b)(5), allowing a party to withhold material and create a privilege log). I also share Defendants' concern about creating unnecessary battles, but I do not agree that pargraph II(B)(2) has that effect. Instead, paragraph II(B)(2) is consistent with law in the Tenth Circuit which places the burden of establishing privilege on the party claiming it. E.g., Barclaysamerican Corp. v. Kane, 746 F.2d 653, 656 (10th Cir. 1984). As for Defendants' concern that the protocol set forth in paragraph II(B)(2) is too informal, I observe that paragraph II(B)(2) states that a question concerning privilege will ultimately be resolved following the filing of a motion, i.e., after opportunity to be heard. As for Defendants' concern that paragraph II(B)(2) permits Plaintiffs to challenge Defendants' "Privileged" designation without a good faith statement for such a challenge, I will remind all parties that any "Privileged" designation and any challenge to that designation must comply with

---

[3] Defendants' objections and Section II(B) of the Protective Order both purport to deal exclusively with privileged, rather than confidential, information. However, all parties in their supporting briefs use both words, apparently interchangeably. Nevertheless, I have interpreted Defendants' arguments as stated in their objections, i.e, to be directed only at the process by which documents labeled "Privileged" is challenged. I also observe that the Protective Order, in Section I(B) (to which no party has lodged an objection), explicitly states that it supplements and does not alter the pre-existing Protective Order (Doc. 374) filed March 27, 1989. The March 27, 1989 Protective Order deals almost exclusively with confidential material and does not affect claims of privilege. Doc. No. 374 at ¶7.

Federal Rule of Civil Procedure 11. Finally, as for Defendants' concern about other cases, nothing in Judge Smith's Protective Order limits the rights of Defendants to assert their privilege claims in other cases, regardless of whether a privilege determination is made or even requested in this case. Accordingly, the Magistrate Judge did not err in imposing paragraph II(B)(2).

**6.     Paragraph II(A)(2)**

Defendants object to paragraph II(A)(2) of the Protective Order because it purports to exclude from the Protective Order documents turned over to Plaintiffs "pursuant to the Jackson settlement process." Doc. No. 1269 at 11. Defendants further assert that during the last three years Defendants have handed over documents which require "general if not specific protection by a Protective Order." Id.

Implementing retroactive privilege review of three years worth of documents already disclosed would certainly be a cumbersome undertaking. I detect no odor of dead fish in Judge Smith's decision not to require the parties to perform that task. Defendants do not mention any specific document already disclosed but in need of the designation "Privileged." Accordingly, the Magistrate Judge did not err in declining to apply the Protective Order to any documents produced before its entry.

**7.     Paragraphs II(B)(3) and IV(B)**

Defendants object to paragraphs II(B)(3) and IV(B) on the ground that they require pursuit of protective orders in other litigation by other counsel not cognizant of the issues in this case. These two paragraphs purport not to limit any party's ability to seek relief in other suits as to discovery of documents (¶ II(B)(3)) and testimony of the individuals identified in paragraph 29 of the JSD (¶IV(B)). Defendants contend that paragraphs II(B)(3) and IV(B) violate their due

10

process rights, or alternately the State of New Mexico's rights under Article III and the Eleventh Amendment, by inviting inconsistent results and judicial shopping through placing Defendants on a "judicial merry-go-round."

Defendants quote extensively from Justice Rutledge's concurrence in Marino v. Ragen, 332 U.S. 561 (1948). In Marino, the Supreme Court granted a petitioner's writ of habeas corpus after the State of Illinois conceded that it had deprived him of due process by imprisoning him for life one week after he was indicted, when one of his interpreters was the arresting officer, when he was never represented by counsel, and when he was not tried and did not plead guilty. Marino, 332 U.S. at 564 (Rutledge, J., concurring). Justice Rutledge observed that one who petitions for a writ of habeas corpus was normally required to first exhaust his state court remedies. Id. Justice Rutledge then examined the Illinois system for assigning error, describing it as a labyrinth made up of blind alleys which only an oracle could navigate and calling it a "merry-go-round." Id. at 565, 568, 570. Specifically, Justice Rutledge concluded that the opportunity for a person convicted in Illinois state court in violation of his federal constitutional rights to assert those rights was not adequate so long as that person was first required "to ride the Illinois merry-go-round" before going to federal court. Id. at 570. Defendants thus compare the Illinois system in Marino to a proceeding before Judge Svet in which Judge Svet withheld ruling until trial on whether the internal compliance monitor could testify in Taylor v. Otten, No. CIV 98-1382 JC/DJS, depending on the nature of the monitor's testimony which was then unknown. Doc. No. 1268, Ex. F, Att. C, at 52-53, 66-67.

The analogy is difficult to see. Unlike inmates deprived of constitutional rights in Illinois in the mid 1940's, Defendants have been heard at great length in this case and in the Taylor case

11

too. Although Defendants have not received the rulings which they would prefer, they have had due process. To the extent Defendants object to the possibility of inconsistent rulings, they have not persuaded me that Judge Smith erred in failing to ensure against inconsistent rulings by decreeing that the community monitor could never testify for Plaintiffs' or Intervenors' counsel in other cases. To date, there is neither a ruling in Taylor with respect to the community monitor nor a motion made in another case with which the eventual ruling in Taylor might conflict. While Defendants will no doubt need to remain alert for cases in which witnesses which they claim as theirs will be compelled to testify, the Court is confident that such witnesses will call such matters to Jackson defense counsels' attention, as apparently happened in Taylor. Similarly, the process by which Defendants can label documents as privileged should serve as adequate warning to members of the Attorney General's staff defending other cases but who are not familiar with this case. In short, the danger from inconsistent rulings--if it can even be considered a danger--has been vastly overstated. So too has the fear that Defendants will be denied due process by receiving no notice at all of objectionable matters in other cases. To the extent Defendants object to "judicial shopping" their objection is unclear and thus cannot be evaluated.

Defendants' argument with respect to Article III and the Eleventh Amendment, which they may or may not intend to limit only to objection number 7, is very difficult to follow. By their precise page citation to Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, 506 U.S. 139, 146 (1993), it appears Defendants are challenging the Ex parte Young doctrine by which a plaintiff may seek prospective injunctive relief against state officials. Ex parte Young is of course still the law. Board of Trustees v. Garrett, 531 U.S. 356, ___ n. 9 (2001). Judge

Smith thus did not err in electing to follow it in paragraphs II(B)(3) and IV(B) of the Protective Order.

**8.      Other objections**

>    Defendants' Objection 8, in its entirety, is as follows.
>
>    Defendants object to the Protective Order in that it did not contain the elements requested by Defendants in the proposed order . . . , and it fails to protect the Defendants' privilege right generally, their due process rights, and alternatively, the rights of the State of New Mexico under Article III and the Eleventh Amendment to the United States Constitution by bifurcation of the consideration of adequate remedies in the Order of September 7, 2000.  Furthermore, it will hinder the resolution of the Jackson litigation by chilling the exchange of information, suggestions, and internal critical analysis as Plaintiffs' counsel continue to pursue discovery to further other non-Jackson litigation.
>
>    Presumably, these objections are directed at the entirety of the Protective Order.

Defendants' arguments about privilege, due process, Article III and the Eleventh Amendment, and a chilling effect on this case were raised in certain of Defendants' other seven objections. Thus, for reasons already explained, the Magistrate Judge did not err in rejecting or not considering these arguments.  Defendants' objections that the Magistrate Judge erred by not adopting Defendants' proposed order is not persuasive, particularly since Defendants never return to this assertion in their brief in support.  Defendants also do not return to their objection about bifurcation of decision on their motion for a protective order or dismissal.  Accordingly, Defendants' objection 8 will be denied in all respects.

## Motion for Reconsideration

The Federal Rules of Civil Procedure do not provide for motions to reconsider. Hatfield v. Board of County Comm'rs for Converse County, 52 F. 3d 858, 861 (10th Cir. 1995). Courts have nonetheless considered such motions to correct manifest errors or fact or law, to review newly discovered evidence, or when the law has changed. Burnett v. Western Resources, Inc.,

13

929 F.Supp. 1349, 1360 (D. Kan. 1996); Gutierrez v. Specialty Brands, Inc., No. CIV 00-102 DJS/RLP, Doc. No. 51 at 2-3 (June 27, 2001).  A motion to reconsider is also appropriate where the Court patently misapprehends a party's position.  Huff v. UARCO, Inc., 925 F. Supp. 550, 561 (N.D. Ill. 1996).  A motion to reconsider is not appropriate to reargue issues already decided, Frederick v. Southeastern Pennsylvania Trans. Authority, 926 F.Supp. 63, 64 (E.D. Pa. 1996), or to present new arguments that could have been raised before, Estate of Flake ex rel. Flake v. Hoskins, 124 F.Supp.2d 666, 667 (D. Kan. 2000).

  Defendants ask that I reconsider my decisions not to exclude any counsel, not to impose any firewall, and not to dismiss this case.  Defendants have not established or even argued that I misapprehended their position concerning the exclusion of counsel or imposing firewalls.  Defendants also do not argue that the law with respect to excluding counsel or imposing firewalls has changed, and have similarly not presented any new evidence or facts to support these forms of relief.

  Defendants seem to be primarily asserting that neither the current facts nor the current law support jurisdiction and that I should therefore reconsider my September 2000 decision not to dismiss this case.  First, Defendants contend that the factual basis for Plaintiffs' substantive due process claim has been removed.  Plaintiffs' substantive due process claim was premised on "rights of the confined," as discussed in Youngberg v. Romeo, 457 U.S. 307 (1985).  Defendants assert that this premise vanished when the institutions in Los Lunas and Ft. Stanton closed in 1995 and 1997.  Defendants seem to cite Youngberg v. Romeo with respect to the motion for which reconsideration is requested merely in an effort to recount the history of this case on the way to asserting that because Defendants were voluntarily agreeing to implement relief, there

14

was no longer jurisdiction in this case. Doc. No. 1222 at 4. If Defendants' poorly articulated argument on page 4 of their reply in support of their motion for a protective order or dismissal was intended to be the same as that which Defendants present on page 2 of their brief in support of their motion to reconsider, then the Court most certainly misapprehended it. But even so, Defendants first raised this argument (if they raised it at all) in their reply brief supporting their initial motion for a protective order or dismissal. Plaintiffs and Intervenors thus did not have adequate opportunity to respond, the Court did not have the benefit of an opposing party's analysis of the law, and Defendants therefore brought their argument too late. Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000). Although Defendants may be attempting to present the same contention again in their motion to reconsider, to which parties opposing the motion have had an opportunity to respond, Defendants have buried their assertion about the closure of Los Lunas and Ft. Stanton in the section of their brief titled "Introduction," never to return to it again, even in the portion of their brief specifically devoted to reconsidering the decision not to dismiss the case. Further, in the same brief, Defendants use language suggesting that they concede jurisdiction does in fact exist. Doc. No. 1269 at 10 (". . .the jurisdiction of this Court rests on a 'slender reed'. . ."). Perhaps for these reasons Plaintiffs and Intervenors did not respond. The Court is thus still without any briefing on Youngberg from an opposing party. Under these circumstances, I decline to reconsider my decision not to dismiss the case based on Defendants' argument about Youngberg and the premise of this case.[4]

Second, Defendants seem to contend that one of the statutory bases for the relief in this

---

[4] If Defendants believe, after assessing their assertion based on Youngberg in light of Fed. R. Civ. P. 11, that dismissal of this case is warranted now because circumstances changed in 1995 and 1997, they may file a motion to dismiss making that specific argument.

case has been declared unconstitutional since Defendants filed their motion for a protective order or dismissal. In <u>Board of Trustees v. Garrett</u>, 531 U.S. 356, ___ (2001) the Supreme Court held that the Eleventh Amendment bars suits under the Americans with Disabilities Act by private individuals against states for money damages. The Supreme Court expressly observed, however, that the ADA is enforceable by private individuals for injunctive relief. <u>Id.</u> at ___ n. 9. This is just such a case.

The remainder of Defendants' arguments in support of reconsideration of the Court's decision not to dismiss the case were all understood by the Court at the time they were initially made and relate to case law, evidence, and facts previously considered.

IT IS THEREFORE ORDERED THAT Defendants' objections to the Protective Order entered by Judge Smith on April 9, 2001 are overruled, and Defendants' motion for reconsideration of the Order of September 7, 2000 is denied.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**