IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WALTER STEPHEN JACKSON, et al.,

        Plaintiffs,

vs.                                                                                    Civ. No. 87-839  JP/LCS

LOS LUNAS CENTER FOR PERSONS
WITH DEVELOPMENTAL DISABILITIES, et al.,

and

THE ARC OF NEW MEXICO, Intervenor,

and

MARY TERRAZAS, et al., Intervenors pro se.

## MEMORANDUM OPINION AND ORDER

      On December 2, 2002 Defendants filed Motion No. 73 for Partial Disengagement. Although Plaintiffs agreed with Defendants that judicial oversight of the community services listed in Motion No. 73 should be terminated, intervenor ARC of New Mexico (ARC) objected to terminating oversight for "that portion of the motion related to paragraph 36, part (e) in the Southeast Region."  Doc. No. 1385 at 1.  Paragraph 36, part (e) of the Joint Stipulation on Disengagement (JSD) addresses whether behavioral services have been integrated into an individual's service plan.

      Termination of judicial oversight is warranted once Defendants have meet the continuous improvement requirements outlined in paragraphs 32 and 33 the JSD.  As applied to the integration of behavioral services, paragraph 32 requires that Defendants increase their

compliance level by "15% for each of three years" beginning with the 1998 audit.  Under paragraph 33,

> [i]f the level of improvement for a particular item in one region in a given year exceeds the level of required improvement for that item in that region for three years, the Department will have met the required continued improvement level for that item in that region.  In that event, the Department will substantially maintain that level of compliance for an additional year. . . . The data generated by the community audit shall be conclusive evidence for determining the extent of future compliance and continued improvement for each of the items specified in ¶¶ 35-37 of this Stipulation.

The Community Monitor, Linda Glenn, generated the following compliance record for Defendants' integration of behavioral services into individual service plans for the Southeast Region.

| Year | Compliance |
|------|------------|
| 1997 | 10% |
| 1998 | 0% |
| 1999 | 60% |
| 2000 | 13% |
| 2001 | 80% |
| 2002 | 60% |

Doc. No. 1380 at unnumbered page 7.  In 1997, for example, 10% of the developmentally disabled who needed behavioral therapy had it integrated into their individual service plan.  ARC acknowledges that Defendants surpassed the required improvements for this provision when it achieved 80% compliance in 2001.   However, ARC argues that under paragraph 33 of the JSD Defendants did not substantially maintain that level of compliance for an additional year.  Doc. No. 1385 at 2.  ARC contends that the 25% decrease in compliance between 2001 and 2002 represents a "significant, precipitous drop off in one year."  *Id*. at 4.

Defendants argue that this pattern of compliance is not remarkably different from the compliance history for paragraph 35, (a) of the Southeast Region, which this Court held justified

2

disengagement. Doc. No. 1250 at 2. However, there are two reasons why Defendant's comparison is flawed. First, when this Court reviewed Defendant's Motion No. 65, Doc. No. 1231, the compliance level for paragraph 35 (a) had fallen from 80% in 1999 to 69% in 2000. There the drop in compliance was only 11 percentage points, representing a 14% decrease in compliance, compared to the reduction of 20 percentage points here, which represents a 25% dip in compliance. Second, this Court found that the Department had substantially maintained compliance since the 69% rate "significantly exceed[ed] the stated goal of 45 percent." Here, however, the 2002 compliance level is just 5 percentage points above the stated goal of 55%. Given the larger drop in compliance and the much narrower gap between the stated goal and the current compliance level, comparing the compliance history of paragraph 35 (a) of the Southeast Region and paragraph 36 (e) of the Southeast Region is unjustified.

In addition the compliance history here shows significant fluctuations: from 0% to 60% between 1998 and 1999, back down to 13% in 2000, and then up again to 80% in 2001. Although the last downward turn from 80% to 60% in 2002 is not nearly as big as these former vacillations, the 60% compliance level does not have the stability other compliance histories have shown. *Cf*. Motion 68, Doc. No. 1234 at 8 (granting disengagement on paragraph 36 (c) for the Metro Region with a compliance history of 61%, 84%, 77%, and 77% from 1997 to 2000 and a stated goal of 80%). Hence the community audit figures do not show that the compliance level for behavioral services has been substantially maintained at this time.

Although Defendants have invited the Court to look behind the statistics underlying the Community Auditor's report, under the JSD "the data generated by the community audit shall be conclusive evidence for determining the extent of future compliance and continued improvement

for each of the items specified in ¶¶ 35-37 of this Stipulation."  Nevertheless, should Defendants maintain a compliance level above the stated goal in the future, the Court will consider favorably such results.

     IT IS THEREFORE ORDERED that the ARC of New Mexico's objection to Motion No. 73 is sustained; although the Court has granted all of the uncontested provisions of Defendants' Motion No. 73, Doc. No. 1384, Defendants' Motion No. 73 (Doc. No. 1380) is denied with respect to paragraph 36, part (e) as it applies to the Southeast Region.

                                                                               _/s/ James A. Parker_
                                           CHIEF UNTIED STATES DISTRICT JUDGE