IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

WALTER STEVEN JACKSON, et al.,

                Plaintiffs,

vs.                                          No. CIV 87-839 JAP/KBM

LOS LUNAS CENTER, et al.,

                Defendants,

and

THE ARC OF NEW MEXICO,

                Intervenor,

and

MARY TERRAZAS, et al.,

                Intervenors, pro se.

MEMORANDUM OPINION AND ORDER

Introduction

On November 21, 2014, Defendants filed EVALUATIVE COMPONENTS AS DIRECTED BY JUDGE PARKER'S ORDER OF 9/11/14 [DOC 1996] (Defendants' evaluative components) (Doc. No. 2008). Defendants' evaluative components for the Goals and Objectives of the Safety, Health, and Supported Employment Plans are intended to lead to the disengagement of all outstanding obligations listed in Table I of the MEMORANDUM OPINION AND ORDER entered September 11, 2014. (Doc. No. 1996 at 62, ¶ D). The parties were allowed to submit comments regarding Defendants' evaluative components, and on

1

December 12, 2014, Plaintiffs filed COMMENTS REGARDING DOC. 2008 DEFENDANTS'
EVALUATIVE COMPONENTS AS DIRECTED BY JUDGE PARKER'S ORDER OF 9/11/14
[DOC. 1996] (Plaintiffs' Comments) (Doc. No. 2014).

Consistent with the process set forth in the JOINT STATUS REPORT (Doc. No. 1986 at
2–3), on December 31, 2014, the Jackson Compliance Administrator (JCA) Sue A. Gant Ph.D.
filed FORMAL RECOMMENDATION[S] (Doc. No. 2016). On January 15, 2015, Defendants
filed OBJECTIONS TO THE JACKSON COMPLIANCE ADMINISTRATOR'S PROPOSED
EVALUATIVE COMPONENTS (Defendants' Objections) (Doc. No. 2022).

On January 27, 2015, the Court conducted a telephonic conference (Doc. No. 2027) on
Plaintiffs' January 24, 2015 letter request that they be permitted to file a response to Defendants'
Objections. Plaintiffs' counsel primarily argued that Defendants' evaluative components were no
different than the JCA's Formal Recommendations, notwithstanding Defendants Objections to
the Formal Recommendations. The Court allowed Plaintiffs to file a list of those Objectives for
which Plaintiffs believed Defendants' evaluative components mirrored Dr. Gant's
recommendations. On February 2, 2015, Plaintiffs filed PLAINTIFFS' LIST OF EVALUATIVE
COMPONENTS (Doc. No. 2028).

The Court held a status conference on February 11, 2015, so that counsel could address a
number of the Court's questions concerning the definition of sustained substantial compliance
and the proposed evaluative components. At the February 11 hearing, counsel for both parties
responded to the Court's questions regarding the evaluative components.

The Court now decides Defendants' Objections to the JCA's Formal Recommendations
to arrive at the final evaluative components for the Goals and Objectives of the Safety, Health,

and Supported Employment Plans.[1] Defendants must demonstrate sustained substantial compliance with all of the final evaluative components, as well as other outstanding obligations (*see* Doc. No. 1996, Table II), and should diligently work to do so in order for the Court to end active oversight of this case.

## Discussion

I.   <u>Introductory Comments Regarding Proposed Evaluative Components and Recommendations</u>

Defendants recite the Goals and Objectives of the three plans and then propose evaluative components. Defendants refer to a "Component Manager," who apparently will oversee completion of the evaluative components in a specific area. Defendants provide no additional argument with their evaluative components, although Defendants' Objections present numerous arguments why Defendants believe the Court should adopt their evaluative components instead of the JCA's. Defendants' Objections at 1–7.  Many of Defendants' evaluative components propose a threshold of 80% compliance.

In their comments, Plaintiffs ask the JCA to reject "the substantial majority" of Defendants' evaluative components based on Plaintiffs' position that Defendants' evaluative components do not provide the plaintiff class with the benefits of the Court's Orders. Plaintiffs' Comments at 1. Plaintiffs contend that there are five recurring problems with Defendants' evaluative components 1) the evaluative components do not reflect a substantive outcome but instead reflect a process for taking action; 2) the evaluative components describe what Defendants will do, not what difference it will make to a Jackson Class Member (JCM) or how completion of the components will improve the service system; 3) the evaluative components do not relate to any significant change or improvement to the current practice; 4) the evaluative

---

[1] As noted under Section II of this Order, the JCA and the parties may agree to make some changes to the Court's final evaluative components.

components are not objective or measurable; and 5) the evaluative components use measurements or percentages that are unreasonable and not consistent with professional standards. *Id.* at 2–4.

At the February 11 status conference, Plaintiffs' counsel emphasized that while the parties had proposed many different action steps to be completed through the years, the completion of those steps did not necessarily reflect an improvement in services to the JCMs. According to Plaintiffs, Defendants' evaluative components merely describe what Defendants will do rather than show how certain steps will impact or improve services to the JCMs. In addition, Plaintiffs argue that Defendants' proposed 80% compliance threshold in a number of areas is an inadequate level of compliance "when important human needs, such as medical care or safety are at issue." Plaintiffs' Comments at 3. Plaintiffs add "comments" in response to almost all of Defendants' evaluative components. However, Plaintiffs do not propose specific evaluative components for the Objectives.

In the Formal Recommendations, the JCA provides a 2-page overview and a 27-page list of Objectives and recommended evaluative components. The JCA proposes five "core elements" that she believes are key in meeting Defendants' obligations to the JCMs: "1) activities demonstrate achievement of intended outcomes; 2) performance deviation be promptly detected and remediated; 3) criteria that [are] developed that are feasible, reliable and most likely to yield action which will improve practice; 4) gathering only enough data to allow realistic analysis; and 5) using information for continuous evaluation and practice improvement at the individual, program[,] and systems level." JCA's Formal Recommendations, Introduction at 1. The JCA believes that Defendants' proposed 80% compliance threshold is artificial and would subject JCMs to harm. She recommends the use of "reasonable solutions intended to institutionalize

4

policy and practice that allows defendants to achieve and sustain intended outcomes." *Id.* at 2. The JCA also proposes that Defendants provide quarterly written status reports to the Court, the JCA, and the parties that demonstrate progress or identify barriers.

Defendants' Objections state that the "DOH [the Department of Health] criteria for all [O]bjectives represent a comprehensive set of indicators that address the [O]bjectives and can be used to monitor and improve the systems and the processes and the entities that execute them across the Developmental Disabilities Supports Division (DDSD) and its providers." Defendants' Objections at 4. According to Defendants, the JCA's Formal Recommendations "stop short of being effective evaluative components because they are not sufficiently objective to provide a clearly understood performance target." *Id.* Defendants urge the Court to adopt their proposed evaluative components based on Defendants' positions that their proposals "are consistent with expectations for good levels in systems such as those in place for DDSD and their providers" and "are consistent with expectations for controlling human performance in such systems and reflective of the limitations of the data sets and measurement approaches that can be used on the systems." *Id.*

Defendants attach a 78-page chart to their Objections comparing the JCA's Formal Recommendations to Defendants' evaluative components. *Id.* at 9–87. In the chart, Defendants set forth an "Objective Measurement Description" of each Objective, re-stating what Defendants' believe each Objective generally requires. Defendants then recite the evaluative components from their November 2014 filing (Doc. No. 2008) and state Objections to the JCA's Formal Recommendations. Suffice it to say, there is little agreement between the parties or between Defendants and the JCA.

The Court has reviewed the JCA's Formal Recommendations and the parties' positions and proposals. The Court sets out, under Section II of this Order, specific rulings and comments pertaining to some of the final evaluative components.

The Court further observes that in some instances, the JCA's proposed evaluative components merely repeat steps contained under other Objectives. For example, under Health Objective H1.2, the Court requires in evaluative component H1.2a that Defendants accurately document each JCM's healthcare needs, conditions, and risk factors in the JCM's health care plan. The JCA recommends a similar evaluative component be included in Health Objective H1.3a – "Each JCM has an accurate health record." After setting forth evaluative components under one Objective, the Court does not restate the same or similar evaluative components under other Objectives.

The Court also avoids using evaluative components for Objectives that already contain specific, required steps. For example, Health Objective H1.8 states that each JCM will receive medications in the doses prescribed, in the manner and frequency prescribed, and at the time prescribed. There is no need to repeat the same language as an evaluative component under Health Objective H1.8.

With respect to using percentile thresholds for compliance, the Court finds that such figures are arbitrary and difficult to apply. *See Fortin v. Comm'r of the Dep't of Mass. Pub. Welfare*, 692 F.2d 790, 795 (1st Cir. 1982) ("[N]o particular percentage of compliance can be a safe-harbor figure, transferable from one context to another. Like reasonableness, substantiality must depend on the circumstances of each case, including the nature of the interest at stake and the degree to which noncompliance affects that interest."). The Court will not use percentile compliance thresholds in the final evaluative components.

In deciding the Objections, the Court sets out the Goals and each Objective at issue from the Safety, Health, and Supported Employment (SE) plans. Doc. 1996, Table I. The Court then presents the final evaluative components for each Objective. In some instances, the Court comments about why it did not adopt the positions of the JCA and parties. Table IV, attached to this Order, contains a list of the final evaluative components without comments.

II.      Final Evaluative Components[2] for Health, Safety, and Supported Employment Plans

**HEALTH PLAN**

A.      **HEALTH GOAL 1**
         Consistent, informed and effective healthcare coordination.

      1.      ***Health Objective H1.1***
               Expectations for healthcare coordination are appropriate as evidenced by well-defined roles and responsibilities that are carried out and measured at the provider, region and state level.

               **H1.1a** The Department of Health (DOH) must define healthcare coordination roles and responsibilities at the provider, regional, and state levels in DOH policies, procedures, and standards.
               **H1.1b** The DOH must disseminate the definitions referred to in H1.1a to all pertinent providers.
               **H1.1c** The definitions of healthcare coordination roles and responsibilities must contain measurable performance indicators so that the DOH can assess whether the assigned responsibilities are carried out at the provider, regional, and state levels.
               **H1.1d** The DOH must annually evaluate the performance of healthcare coordination roles and responsibilities consistent with the measurable performance indicators through the use of field surveys or other appropriate tools.
               **H1.1e** The DOH must take prompt corrective action for healthcare coordination performance that does not meet the measurable performance indicators.
               **Component Manager:** DDSD Clinical Services Bureau Chief.

               Court's Comments: The Court does not use the term "best practice" as proposed by the JCA (Health Objective H1.1d). The determination of

---

[2] Evaluative components are assigned numbers consistent with the Objective to which they relate. The Court uses a bold font and underlining for emphasis in the numbering of the final evaluative components. For example, the first three final evaluative components for Health Objective H1.1 appear as **H1.1a**, **H1.1b**, **H1.1c**.

"best practice" may pertain to an assessment of substantial compliance. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

2.   ***Health Objective H1.2***
Nurses routinely monitor Jackson Class Members' individual health needs through (1) oversight, (2) communication with DSP (Direct Support Professionals), and (3) corrective actions in order to implement the Jackson Class Members' health plans, to ensure that the Jackson Class Members' health needs are being met, and to timely respond to changes in Jackson Class Members' health status.

**H1.2a** Defendants[3] must ensure that each JCM's healthcare needs, conditions, and risk factors are accurately documented in the JCM's healthcare plan.
**H1.2b** DSP and their supervisors must receive training by nurses in order to competently and correctly implement each JCM's healthcare plan.
**H1.2c** Nurses must visit each JCM in accordance with DOH requirements.
**H1.2d** Nurses must meet with DSP as needed to monitor each JCM's health status.
**H1.2e** Defendants must ensure prompt revision of a JCM's healthcare plan if there is a change in the JCM's health status.
**Component Manager:** DDSD Clinical Services Bureau Chief

Court's Comments: The Court generally follows the JCA's Formal Recommendations. But, the Court does not include the JCA's recommendation that "[g]uidelines and performance expectations for nursing" be "established and used to evaluate the adequacy of nurse practice." JCA's Formal Recommendations at 1 (H1.2e). That action falls outside the more specific aim of Health Objective H1.2. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

3.   ***Health Objective H1.3***
Teams use accurate health records for Jackson Class Members.

**H1.3a** Defendants must monitor the accuracy of each JCM's healthcare plan, including the JCM's current health records.
**H1.3b** Each JCM's "Therap eCHATs" ("Electronic Comprehensive Assessment Tool") must be updated within 45 days before an IDT (Interdisciplinary Team) Meeting at which the JCM's annual ISP (Individual Service Plan) is created.

---

[3] When the Court is not certain who specifically should take a certain action, the Court refers to "Defendants" or to the department being discussed in the recommendations and proposals. However, Defendants can best determine the appropriate individuals or departments that should take specific actions.

**Component Manager:** DDSD Bureau of Systems Improvement Chief.

Court's Comments: In some instances, the JCA's Formal Recommendations restate elements of the Objective. In that event, the Court omits duplicative language. Defendants argue that the JCA proposes "actions" rather than evaluative components. The Court does not see such a clear distinction between actions and evaluative components. The Court contemplated that the evaluative components would encompass specific steps for Defendants to complete in order to satisfy the Objectives. The substantial compliance inquiry asks whether Defendants took the required specific steps in furtherance of the essential purposes and intent of the consent decree. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

4.    ***Health Objective H1.4***
Teams (including the individual) have information (education, consultant and technical assistance) needed to achieve goals stated in individual Healthcare Plans, MERPs [Medical Emergency Response Plans], CARMPs [Comprehensive Aspiration Risk Management Plans] and written direct support instructions as appropriate to the individual.

**H1.4a** DDSD must identify healthcare professionals with specialized skills to provide needed information, consultation, and technical assistance to IDTs, based on an accurate assessment of the JCM's healthcare needs.
**H1.4b** Each JCM must have access to healthcare professionals with specialized skills, as needed.
**Component Manager:** DDSD Medical Director.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

5.    ***Health Objective H1.5***
Identified health needs for Jackson Class Members, including daily medical considerations, are addressed in individualized healthcare plans, MERPs, CARMPs, and written direct support instructions as appropriate to the Jackson Class Members. Healthcare plans are reviewed and promptly modified in response to changes in health status.

**H1.5a** Defendants must prepare quarterly reports on a sample[4] of the JCMs to monitor the accuracy of the JCMs' individual healthcare plans.
**H1.5b** Defendants must take action to correct inaccuracies in the JCMs' individual healthcare plans.

---

[4] The Court understands that, as of January, 2015, 292 JCMs remain of the original class of 552. It should not be burdensome to obtain a scientifically valid sample of the current number of JCMs.

**Component Manager:** DDSD Clinical Services Bureau Chief.

Court's Comments: Because some of the proposed evaluative components under Health Objective H1.2 apply also to Health Objective H1.5, the final evaluative components under Health Objective H1.2 are not repeated under Health Objective H1.5. Moreover, because Health Objective H1.5 contains specific steps that Defendants must satisfy, the Court does not repeat those steps in the final evaluative components. Although Defendants propose that the JCM's healthcare plans cover health issues listed as "Required in the current e-CHAT summary sheet," the Court does not know what the summary sheets contain. Thus, the Court is unable to determine if the summary sheet requirements are appropriate final evaluative components. If the parties and the JCA agree to an evaluative component regarding a summary sheet, it can be added as H1.5c. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

6.   ***Health Objective H1.6***
Current and complete information is provided to the healthcare professionals treating or evaluating the individual.

**H1.6a** Healthcare professionals, who treat or evaluate a JCM, must have a copy of the JCM's accurate "Health Passport."
**H1.6b** Each JCM's healthcare plan must indicate that the JCM's accurate and up-to-date Health Passport is to be provided to treating or evaluating healthcare professionals.
**H1.6c** A JCM's provider or case manager must ensure that a JCM's accurate Health Passport is provided to treating and evaluating healthcare professionals.
**Component Manager:** DDSD Clinical Services Bureau Chief.

Court's Comments: Both the JCA and Defendants contemplate that printed or hard copies of the JCM's healthcare records are provided to healthcare professionals. The Court requires that healthcare professionals receive accurate and current healthcare information, regardless of format. In addition, Defendants appear to distinguish between internal and external healthcare professionals. All treating and evaluating healthcare professionals must have accurate and current healthcare information. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

7.   ***Health Objective H1.7***
The team assures recommendations from healthcare professionals are reviewed with the individual and guardian in a manner that supports informed decision making and [are] either implemented, or documented in a Decision Consultation Form if recommendation is declined.

**H1.7a** A JCM's IDT must ensure that a healthcare professional's recommendations and assessments (1) are promptly communicated to the nurse, guardian, DSP, and entire healthcare team, as needed, and (2) are implemented, unless the IDT declines the healthcare professional's recommendations by completing a Decision Consultation Form.

**H1.7b** A JCM's healthcare records must accurately identify and reflect any recommendations and assessments of the JCM's treating and evaluating healthcare professionals.

**H1.7c** Defendants, through appropriate personnel, e.g., provider agencies and case managers, must ensure that a healthcare professional's recommendations are implemented within the prescribed timeframe.

**H1.7d** The JCM's IDT must complete a Decision Consultation Form, as appropriate, for use by the JCM's healthcare professionals. The Decision Consultation Form must be kept in the JCM's healthcare records.

**Component Manager:** DDSD Statewide Case Management Lead.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

8.  ***Health Objective H1.8***
    Each Jackson Class Member will receive the Jackson Class Member's medications (1) in the doses prescribed, (2) in the manner and frequency prescribed, and (3) at the times prescribed.

    **H1.8a** Defendants must monitor the accuracy of dispensation of prescription medications to each JCM.

    **H1.8b** Defendants must take prompt action to correct any failure to properly dispense medications to a JCM in accordance with prescriptions.

    **Component Manager:** DDSD Clinical Services Bureau Chief

    Court's Comments: The JCA's Formal Recommendations restate the elements of Health Objective H1.8 which do not need to be repeated as final evaluative components. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

B.  **HEALTH GOAL 2**
    Early identification of deteriorating health.

    1.  ***Health Objective H2.1***
        Jackson Class Members receive age appropriate preventive/early detection screening/immunizations for health risk factors.

**H2.1a** The DOH must publish and implement routine preventive and early detection healthcare screening standards, adjustable for the age and the specific condition of each JCM. Defendants may adopt, if appropriate for a JCM, the national screening and immunization standards, that Defendants refer to as the "US Preventive Services Task Force A and B Recommendations" and the "Immunization Practices clinical preventive services."

**H2.1b** Each JCM must receive routine preventive screening and immunizations consistent with the DOH's standards unless the JCM, in conjunction with the JCM's guardian and primary healthcare provider, makes an informed choice to reject the recommended screening and immunization standards.

**Component Manager:** DDSD Clinical Services Bureau Chief.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

C.    **HEALTH GOAL 3**

Jackson Class Members receive prompt, knowledgeable and effective responses to health symptoms and needs.

1.    *Health Objective H3.1*

Jackson Class Members receive increased intensity of services during acute episodes or illnesses.

**H3.1a** A nurse's monitoring, including nursing assessments and oversight, must increase during a JCM's acute episodes or illnesses.

**H3.1b** Face-to-face visits by a nurse must occur and must be documented in response to a JCM's acute episodes or illnesses.

**H3.1c** The failure of a nurse to monitor a JCM's acute episodes or illnesses must be promptly corrected.

**Component Manager:** DDSD Clinical Services Bureau Chief.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

2.    *Health Objective H3.2*

Direct Service Personnel/supervisors are able to identify subtle signs of change/acute symptoms.

**H3.2a** The DOH must issue and must implement healthcare guidelines for use by healthcare provider staff about the timely identification of and response to changes in the health status of a JCM so that a JCM does not experience unnecessary pain, loss of optimal function, or regression. The

DOH may develop "fact sheets" that define a specific health condition, related signs and symptoms, and recommended actions, or the DOH may develop other pertinent policies and procedures that provide the required guidance.

**H3.2b** Each JCM's ISP must contain individual-specific information on how to identify subtle signs of change or acute symptoms.

**H3.2c** DSP and supervisors must receive and must complete appropriate training on how to timely identify signs of change or acute symptoms in a JCM.

**H3.2d** DSP and supervisors must promptly document in the ISP or Healthcare Plan any acute symptoms and any signs of change in a JCM's health status.

**Component Manager:** DDSD Training Unit Manager.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

3.   *Health Objective H3.3*
When informed of signs of change in health status (including chronic and acute pain) agency nurses take immediate action.

**H3.3a** The DOH or pertinent agency must develop and must publish effective pain management strategies for addressing a JCM's chronic and acute pain.

**H3.3b** The DOH or pertinent agency must communicate these effective pain management strategies to the JCM's treating healthcare professionals.

**H3.3c** The DOH must evaluate the effectiveness of pain management strategies and must record the effectiveness of those strategies in the JCM's e-CHAT, healthcare plan, and nursing report.

**H3.3d** Nurses must identify and must respond to signs of a JCM's chronic and acute pain and must take prompt action to reduce or to eliminate the JCM's pain.

**Component Manager:** DDSD Clinical Services Bureau Chief.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

4.   *Health Objective H3.4*
When an individual is receiving healthcare in an out of home setting, critical health and functional information will be provided and the individual's existing adaptive equipment that can be used in that setting will be offered.

**H3.4a** The DOH must develop and must implement a procedure to ensure communication of a JCM's need for existing adaptive equipment and supports to an out-of-home provider.

**H3.4b** The out-of-home provider must receive a JCM's Health Passport, along with information concerning the JCM's mobility, comfort, safety, and sensory items within 24 hours of the JCM's placement with an out-of-home provider.

**H3.4c** The necessary adaptive supports already used by a JCM must be offered to the out-of-home provider within 24 hours of the JCM's placement with an out-of-home provider.

**Component Manager:** Jackson Compliance Officer.

Court's Comments: The JCA's Formal Recommendations include additional evaluative components concerning discharge planning. Health Objective H3.4 does not encompass discharge planning although Health Objective H3.5 addresses it. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

5.      *Health Objective H3.5*

When a JCM is receiving healthcare in an out-of-home setting, the IDT will plan for a smooth transition back to the JCM's home as soon as medically feasible.

**H3.5a** The JCM's IDT, case managers, and pertinent healthcare staff (including Regional Office and Agency nurses), along with the out-of-home facility's discharge planners, must promptly meet together to plan for a JCM's discharge as soon as it is medically feasible to ensure a safe discharge, provided the guardian consents to discharge.

**H3.5b** The JCM's e-CHAT and other healthcare records must be promptly updated by appropriate healthcare providers to indicate healthcare and adaptive supports that the JCM received from the out-of-home provider in order to ensure a safe and smooth transition back to the JCM's home.

**Component Manager:** Jackson Compliance Officer.

Court's Comments: Defendants' evaluative components are not sufficiently specific in referring to "transition discussions." Defendants' Objections at 25 (H3.5). To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

D.   **HEALTH GOAL 4**
Competent and consistent care in line with recommendations and good practice.

1.   ***Health Objective H4.1***
Competent personnel (nurses, DSP, front line supervisors, ancillary providers, and case managers), who have received and passed competency based training related to prevention and early identification, provide services to Jackson Class Members. (Ashton #6, 7, 8)

**H4.1a** The parties and the JCA must develop a mandatory competency based training program.
**H4.1b** Nurses, DSP, front-line supervisors, ancillary providers, and case managers must satisfactorily complete the mandatory competency based training program.
**H4.1c** The DOH must independently measure compliance by nurses, DSP, front-line supervisors, ancillary providers, and case managers with mandatory competency based training.
**H4.1d** The DOH must take prompt remedial action for nurses, DSP, front-line supervisors, ancillary providers, and case managers who are found deficient in the mandatory competency based training.
**H4.1e** Nurses, DSP, front-line supervisors, ancillary providers, and case managers must receive information specific to Ashton #6, 7, and 8, as outlined in the Health Communications Matrix.
**Component Manager:** Jackson Compliance Officer.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

2.   ***Health Objective H4.2***
IDTs provide for the changing health supports class members need as they age including advanced care planning and have access to palliative care consistent with their individual needs.

**H4.2a** Case managers and agency nurses must provide up-to-date information and resources to JCMs and their guardians about advanced care planning and palliative or end-of-life care so that the JCMs and their guardians can make informed choices.
**H4.2b** The DOH must identify, and must document on an annual basis in the pertinent healthcare records, those JCMs who want advanced care planning, including palliative care, and those JCMs who decline advanced care planning.
**H4.2c** The DOH must provide advanced care planning and palliative care to those JCMs who choose to have advanced care planning and palliative care.
**Component Manager:** DDSD Statewide Case Management Lead.

<u>Court's Comments:</u> To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

3. ***Health Objective H4.3***
Quality Assurance information is used to improve health outcomes.

**H4.3a** The DOH must identify gaps in healthcare services to JCMs and must develop strategies to improve healthcare services to JCMs.
**H4.3b** The DOH must use existing quality assurance information and tools – including the measurements found in the CPR (Community Practice Review), Out-of-Home Placement, Emergency Services Utilization, ANE (Abuse, Neglect, and Exploitation) Reporting, and Provider QA (Quality Assurance) Reports – to improve healthcare services to JCMs and to fill in gaps in healthcare services to JCMs.
**Component Manager:** QMB Bureau Chief.

<u>Court's Comments:</u> It is difficult to develop appropriate and specific final evaluative components for this open-ended Objective. The Court considered proposals by the JCA and by Defendants in an attempt to describe meaningful evaluative components. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

## <u>SAFETY PLAN</u>

A. **SAFETY GOAL 1**
The recommendations from the JCA's report on the incident management system prepared by Eva Kutas are implemented. Incidents of abuse, neglect and exploitation are timely reported, professionally investigated, and needed corrective actions are promptly implemented and sustained.

1. ***Safety Objective S1.1***
Define "Abuse, Neglect and Exploitation" (ANE) consistent with New Mexico Statutory Adult Protective Services (APS) definitions.

**S1.1a** The DOH must promulgate revised regulations that define ANE consistent with APS definitions.
**Component Manager**: Incident Management Bureau (IMB) Bureau Chief.

<u>Court's Comments:</u> Defendants state they have satisfied the requirements of Safety Objective S1.1, as evidenced in the Eva Kutas progress report of 1/9/15. The JCA's Formal Recommendations include additional evaluative components directing DHI to review samples of intake reports to ensure consistency with the new APS definitions. The Court finds that the JCA's

16

Formal Recommendations fall outside the scope of Safety Objective S1.1. To the extent the Court's final evaluative component is inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

2. ***Safety Objective S1.2***
Provide educational information about how to detect ANE.

**S1.2a** The DOH must develop and must provide annually educational information to providers, physicians, clinicians, families, guardians, and law enforcement about detecting ANE.
**Component Manager**: IMB Bureau Chief and Division of Health Improvement (DHI) Trainer.

Court's Comments: The JCA's Formal Recommendation that JCMs be informed of their right to be safe (S1.2b) exceeds the scope of Safety Objective S1.2. Defendants propose using a chart to track the dates and number of times they provide educational information about how to detect ANE. Defendants should use the chart as described at page 30 of Defendants' Objections. To the extent the Court's final evaluative component is inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

3. ***Safety Objective S1.3***
The individuals listed in POA [Plan of Action] CIMS B [Community Incident Management System] [regional coordinators, agency coordinators, direct contact staff, DD[S]D staff, case managers, agency executive staff, IMB investigators, agency IMCs, agency direct service staff] will receive the training described in the Eva Kutas Recommendations #7 and #8 and will pass a formal test of the individuals' knowledge and understanding of IMB provider policy requirements.

**S1.3a** All current and new staff as listed in POA CIMS B and the DDSD staff ( Regional Directors, Assistant Regional Office Bureau Chief, and the DDSD Training Unit) must successfully complete competency based training that incorporates the principles of adult learning described in Kutas Recommendations # 7 and #8.
**S1.3b** All current and new staff in POA CIMS B and the DDSD staff must complete competency based training from a DHI trainer before working alone with JCMs and their guardians.
**S1.3c** All current and new staff in POA CIMS B and the DDSD staff must demonstrate a knowledge and understanding of the training received in S1.3a and S1.3b by passing a formal test.
**S1.3d** All current and new staff listed in POA CIMS B and the DDSD staff must receive refresher competency based training on an annual basis.
**Component Manager**: DHI Deputy Director.

17

Court's Comments: The Court's final evaluative components are a combination of the proposals by the JCA and Defendants. The Court does not include all of the JCA's Formal Recommendations as they exceed the scope of Safety Objective S1.3. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

4.   **Safety Objective S1.4**
     ANE is reported immediately.

     **S1.4a** The DOH must maintain a toll-free 24 hour, 7 days a week, telephone number to receive reports of ANE.
     **S1.4b** The DOH must communicate to its staff and the providers who have contact with JCMs that ANE of JCMs must be reported immediately.
     **S1.4c** IMB must formally document reports of ANE of JCMs and must take corrective action when ANE is not reported immediately.
     **Component Manager**: IMB Bureau Chief.

     Court's Comments: Defendants state that they have designated a statewide toll-free telephone number for IMB reporting of ANE. Thus, the Court requires that Defendants maintain this telephone number and service. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

5.   **Safety Objective S1.5**
     Providers will take immediate action to develop a safety plan after an allegation of ANE to protect the alleged victim(s) during the course of an investigation.

     **S1.5a** Providers for JCMs must immediately develop, with IMB approval and monitoring, an Immediate Action and Safety Plan (IASP) in all cases of reported ANE.
     **S1.5b** The DOH must monitor providers for compliance with IASPs and must take corrective action as needed.
     **Component Manager**: IMB Bureau Chief.

     Court's Comments: Defendants are willing to increase their earlier proposed percentile threshold to 90% from 80%. Defendants' Objections at 33 (S1.5). However, as stated earlier, the Court will not use percentages in the final evaluative components. Defendants argue that they completed the requirements for a safety plan and its approval process, as indicated in Eva Kutas' progress report of 1/9/15. *Id.* To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

6. **_Safety Objective S1.6_**
Severity of the alleged ANE dictates the investigation response.

**S1.6a** The DOH must establish a priority of investigation responses consistent with the applicable policy which requires investigative responses be three hours or less for emergencies, 24 hours or less for Priority 1 incidents, and 5 days or less for Priority 2 incidents. **Component Manager**: IMB Bureau Chief.

Court's Comments: The parties do not say where the policy addressing response times can be found. However, Defendants set forth the pertinent response times for emergency, Priority 1, and Priority 2 incidents, and the Court accepts that this information accurately reflects the parties' understanding. _See_ Defendants' Objections at 34 (S1.6). Defendants further state that revision of the IMB timelines for reporting and investigative responses, using prioritization categories based on severity, is complete as indicated in the Eva Kutas progress report of 1/9/15. _Id._ The Court finds that the JCA's Formal Recommendation that DOH conduct quarterly assessments falls outside the scope of Safety Objective 1.6. JCA's Formal Recommendations at 8. To the extent the Court's final evaluative component is inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

B. **KUTAS RECOMMENDATION #2**: The NM DOH Incident Management Bureau's Abuse, Neglect and Exploitation (ANE) response system will conform to NAPSA [National Adult Protective Services Association] Guidelines for ANE investigation and protective services.

1. **_Safety Objective S[Kutas]2.1_**[5]
Competent ANE Investigators conduct professionally adequate investigations.

**S2.1a** ANE Investigators must pass Core Competency and Field Training before conducting investigations of ANE.
**S2.1b** The Supervisory Review Tool must be used to assess an ANE investigation in every case of ANE.
**S2.1c** ANE investigations must not be closed until they meet the standards of the Supervisory Review Tool, which verifies whether the investigation meets the standard for professionally adequate investigations.
**S2.1d** The DOH must review ANE intake and investigation quality, consistent with the Kutas quality indicators, on a quarterly basis.

---

[5] The numbering of some Safety Objectives and their evaluative components is confusing. For example, Safety Objective 2.1 under Kutas Recommendation #2 ("Competent ANE Investigators….") might be confused with Safety Objective 2.1 ("All deaths are reviewed…."). The Court did not use the JCA's numbering sequence (e.g., S1 2.1 for Kutas Recommendations) and instead, identified the Safety Objectives that pertain to the Kutas Recommendations.

**Component Manager**: IMB Bureau Chief.

Court's Comments: Defendants did not object to the JCA's Formal Recommendations or to the language used by the JCA in the evaluative components. Thus, the Court assumes that Defendants understand the meaning of requiring DOH to "review ANE intake and investigation quality." *See* Defendants' Objections at 35. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

C.    **KUTAS RECOMMENDATION #3**: A single professionally appropriate investigation is conducted that eliminates duplication and minimizes the impact on victims and witnesses.

   1.    *Safety Objective S[Kutas]3.1*
        Consistent with the IGA (Inter-Governmental Agreement), IMB will be the primary authority for ANE investigations.

        **S3.1a** The DOH must promulgate administrative rules that delineate the IMB's responsibilities as they relate to the IMB's primary authority to conduct single ANE investigations.
        **S3.1b** The DOH must monitor the IMB's compliance with these administrative rules on a quarterly basis and must promptly correct any deficiencies.
        **Component Manager**: IMB Bureau Chief.

        Court's Comments: The JCA's Formal Recommendation that the IMB conduct appropriate investigations for all ANE allegations is duplicative of Safety Objective S2.1. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

D.    **KUTAS RECOMMENDATION #4**: The ANE system of reporting and investigation is transparent.  What happens is easily seen and understood. Individuals, families, guardians, providers, case managers and others receive relevant and necessary information about reports and findings that are used to keep individuals safe and address identified system issues.

   1.    *Safety Objective S[Kutas]4.1*
        Provide information regarding ANE reports/investigations to designated stakeholders.

        **S4.1a** The DOH must provide timely information regarding ANE reports, investigations, and findings to JCMs, stakeholders (families, guardians, providers, case managers), and other individuals or staff who need that information to ensure the safety of JCMs.

**S4.1b** The reporter of ANE must receive information from the DOH about the status of the ANE report and any findings.

**S4.1c** Notification of substantiation of ANE reports must comply with New Mexico Administrative Code 7.1.14.12 (Notification of Investigation Results).

**Component Manager**: IMB Bureau Chief.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

E.   **KUTAS RECOMMENDATION #5**: The findings of investigations result in actions that are beneficial to the alleged victim, effectively remediate problems, increase safety and prevent recurrence.

   1.   *Safety Objective S[Kutas]5.1*
        Risk of ANE is reduced when individual/systems issues are identified and prevent[ive] and remedial measures are taken.

        **S5.1a** When there is substantiated ANE, Defendants must take immediate preventive and remedial action at the individual, program, and system levels.

        **S5.1b** When there is substantiated ANE, the appropriate case managers must ensure that identified health and safety risks for a JCM are addressed and remediated.

        **S5.1c** Providers and appropriate regional office staff must review ANE investigations and findings to determine if responses to substantiated ANE are timely, effective, and sustained.

        **S5.1d** When there is substantiated ANE, the JCM's ISP must include pertinent information about the ANE investigation and the ANE report for purposes of reducing and preventing ANE.

        **Component Manager**: IMB Bureau Chief.

        Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

F.   **KUTAS RECOMMENDATION #6**: People are protected from abuse, neglect and exploitation by a reliable ANE system.

   1.   *Safety Objective S[Kutas]6.1*
        Use ANE information to improve health/safety.

        **S6.1a** The DOH must implement an integrated data system to identify patterns concerning ANE at the individual, program, and systems levels.

**S6.1b** Quarterly, the DHI and DDSD must examine IMB data and must identify patterns of ANE, indicated, for example, by multiple reports of ANE by providers or JCMs, by substantiated cases of ANE, by use of emergency services in response to ANE, and by out-of-home placements resulting from ANE.

**S6.1c** The DOH must disseminate to providers and pertinent personnel information about ANE, including patterns of ANE, identified "systems" issues concerning ANE, and identified causes and contributing factors of ANE.

**Component Manager**: IMB Bureau Chief and DDSD Assistant Regional Office Bureau Chief.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

G.  **SAFETY GOAL 2**
Deaths are reviewed in a timeframe consistent with DOH policy by a team of qualified, independent healthcare professionals and relevant administrative personnel.  Detailed findings and recommendations, as appropriate are issued and recommendations from the MRC and corrective actions are implemented. Deaths are reviewed as a learning opportunity to improve quality at the individual, program and systems level. Incidents, deaths and significant events are documented and analyzed, root causes are identified and deficiencies are adequately remediated.

1.  *Safety Objective S2.1*
All deaths are reviewed and a root cause analysis is done of preventable deaths. The findings from the root cause analysis will be used to strategically reduce the likelihood of preventable deaths.

**S2.1a** Qualified independent healthcare professionals and relevant administrative personnel must timely report and review all JCM deaths.

**S2.1b** The DOH must timely provide autopsy reports and independent healthcare professionals' reports of JCMs' deaths to the Mortality Review Committee (MRC), that then reviews and analyzes all JCM deaths, and makes findings and recommendations.

**S2.1c** The DOH must identify and take appropriate remedial actions in response to the MRC's findings and recommendations.

**S2.1d** The DOH mortality review process must be consistent with the components in the General Accounting Office Mortality Review Report, GAO-08-529, as tailored for New Mexico's population and demographics.

**S2.1e** In response to analysis of JCMs' deaths and the mortality review process, the DOH must identify root causes of the JCM deaths and must remediate identified deficiencies in the mortality review process so as to reduce the likelihood of preventable deaths.

**Component Manager**: DDSD Medical Director.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

H.   **SAFETY GOAL 3**

The quality of services, settings, and supports provided by community agencies are evaluated at least annually through the Community Practice Review and at other intervals as appropriate, through provider reviews; any deficiencies are identified, corrective actions are taken and sustained on an individual, program and regional basis.

1.   ***Safety Objective S3.1***

Establish and use indicators to measure quality of DD [Developmentally Disabled] Services in New Mexico.

**S3.1a** The DOH must establish "DD key indicators" at the individual, program, and systems levels that guide programs and services for JCMs.
**S3.1b** The DOH must ensure that the DD key indicators are present in the DDW provider agreements, DDW (Developmentally Disabled Waiver) standards, and the QMB (Quality Management Bureau) review tool.
**S3.1c** The DOH must identify and must document a JCM's preferences and needs, through the use of DD key indicators, the CPR (Community Practice Review), and other JCM data, with respect to gaining skills, increasing independence, and participating in integrated community activities.
**S3.1d** The DOH and providers must respect a JCM's informed choices for program development and services to meet the JCM's preferences and needs.
**S3.1e** Providers must use information from the DD key indicators, the CPR, and the JCM to promptly correct deficiencies in programs and services and to improve practice.
**Component Manager**: DDSD Bureau of Systems Improvement Bureau Chief.

Court's Comments: The Court did not use the JCA's Formal Recommendations that were general and open-ended, e.g., "JCM[s] are safe and protected from harm," "JCMs have opportunities for meaningful and empowering relationships." JCA's Formal Recommendations at 11. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

2.   ***Safety Objective S3.2***

Community Practice Reviews are provided by competent personnel as evidenced by reviewers who have passed competency based training.

**S3.2a** Community Practice Reviewers must satisfactorily complete the DOH mandatory competency-based training, including "Online Pre-Service Manual Part 1, person Centered Planning 2 day, Health and Wellness Coordination, and Advocacy Strategies," before participating in the CPR.

**S3.2b** The Community Monitor must be satisfied with the selection and training of the Community Practice Reviewers and of the Case Judges who review the Community Practice Reviewers' findings.

**S3.2c** The Community Monitor must determine the CPR sampling methodology, protocol instrument, reviewers' guidelines, scoring, and evidence used to assess compliance with the elements of the CPR, consistent with related requirements in the JSD (Joint Stipulation on Disengagement)

**Component Manager**: Community Monitor/Jackson Compliance Officer.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

3.   ***Safety Objective S3.3***
      Implement the CPR.

**S3.3a** The DOH must annually conduct the CPR consistent with the Community Monitor's existing sampling methodology, protocol instrument, reviewers' guidelines, scoring, and evidence.

**S3.3b** The Community Monitor must issue individual, regional, and statewide reports that contain the Community Monitor's findings and recommendations.

**S3.3c** The DOH must continue to provide adequate resources to support the implementation of the CPR for purposes of demonstrating sustainability.

**Component Manager**: DDSD Litigation Management Unit and Jackson Compliance Officer.

Court's Comments: The JCA's Formal Recommendation that Defendants "implement an individual quality review as part of a quality improvement system," falls outside the scope of Safety Objective S3.3. JCA's Formal Recommendations at 12 (S3.3d). Defendants request an evaluative component stating that they must fulfill the requirements of implementing the CPR process for one additional year after the Court makes a finding that Defendants have satisfied all outstanding obligations. Defendants' Objections at 45 (S3.3). This may be an appropriate yardstick although it could also be interpreted to mean that Defendants may stop using the CPR process after that year. Because Defendants' proposed evaluative component is unclear, the Court does not include it as a final evaluative component. To the extent the Court's final evaluative components are

inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

4. ***Safety Objective S3.4***

Use the findings from the CPR to improve services for class members and to improve the system of services for Jackson class members.

**S3.4a** DDSD must work with service providers and case management agencies that have "repeat findings" of deficiencies or problems to improve and sustain improvement with respect to the identified deficiencies or problems.

**S3.4b** The DDSD and providers must use the 2013–2015 CPR findings and recommendations.

**S3.4c** DDSD must meet with providers that have high health risk-related findings and providers that have the highest number or 2013–2015 CPR findings of deficiencies to improve those providers' services to JCMs.

**S3.4d** Defendants must identify actions taken in response to the 2013–2015 CPR findings and ensure that deficiencies are remedied.

**Component Manager**: Jackson Compliance Officer.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

5. ***Safety Objective S3.5***

Competency based training is provided based in part on analysis of identified deficiencies from the CPR through the DDSD required trainings and to specific entities as appropriate.

**S3.5a** DDSD must evaluate CPR findings to identify deficiencies in its required competency-based training.

**S3.5b** Using its evaluation of CPR findings, the DDSD must modify existing competency-based training or must provide additional competency-based training to address identified deficiencies.

**S3.5c** Providers with identified deficiencies, and especially providers with repeat deficiencies, must receive competency-based training designed to address deficiencies.

**Component Manager**: DDSD Training Unit Manager.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

6. ***Safety Objective S3.6***

Use information from the CPR in an integrated manner to inform program development and management for class members.

**S3.6a** DDSD must develop, modify, and manage programs and services for JCMs based on identified correlations in the CPR information and other JCM data.

**S3.6b** DDSD must file semi-annual reports identifying program development and implementation.

**Component Manager**: Jackson Compliance Officer.

Court's Comments: Safety Objective S3.6 is very similar to Safety Objective S3.4. For example, Safety Objective S3.4 requires that Defendants use CPR information to improve services to JCMs, while Safety Objective S3.6 requires Defendants to use CPR information in an "integrated manner" to inform services to JCMs. Safety Objective S3.6 implies that the CPR data should be used with other information to develop and improve services to JCMs. Thus, the Court addresses only the requirement that integrated information be used and measured, and refers to Safety Objective S3.4 for other related final evaluative components. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

7.   ***Safety Objective S3.7***
     Regulatory program reviews are completed by staff who have received and passed competency based training specific to their QMB roles and responsibilities.

     **S3.7a** DHI/QMB staff must receive competency-based training for evaluating programs that serve JCMs.
     **S3.7b** DHI/QMB staff must satisfactorily complete competency-based training before evaluating programs and providers that serve JCMs.
     **Component Manager**: QMB Bureau Chief.

     Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

8.   ***Safety Objective S3.8***
     Regulatory review of CM [case management] agencies by the QMB, will include a review of essential services as determined by professional assessments and IDT decisions of individual needs and preferences.

     **S3.8a** QMB must identify and must review the essential services that should be provided to JCMs, consistent with IDT decisions and determinations by medical professionals, therapists, and nutritional experts.
     **S3.8b** QMB must modify its CM data to reflect the identified essential services for JCMs.

**S3.8c** QMB must review CM agencies on an annual basis, using quality indicators consistent with the DDSD 2006 Case Management Manual Resource Guide and DDSD Service Standards, to ensure essential services are being provided to JCMs.
**Component Manager**: QMB Bureau Chief.

Court's Comments: The JCA recommends steps to assess the "implementation of the ISP" and "the extent to which services are delivered in accordance with the ISP." JCA's Formal Recommendations at 14 (S3.8b). However, that recommendation appears to expand the scope of Safety Objective S3.8. *But see* Safety Objective S5.3. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections

I. **SAFETY GOAL 4**
Prompt and effective action is taken with respect to provider agencies where serious incidents, deaths, patterns of incidents or of significant events or serious programmatic deficiencies have been identified, in order to protect class members, to reduce the risk of future harm and to ensure that quality services and supports are provided.

1. ***Safety Objective S4.1***
Examine current Quality Assurance and Quality Improvement processes and activities intended to safeguard Jackson Class Members and to improve the quality of provider performance in relation to Jackson Class Members. Take steps to increase transparency, accountability, and effective remediation. Establish measurable indicators that are consistent with the pertinent standards that address the quality of provider performance.

**S4.1a** The DOH, with stakeholder input, must analyze its quality assurance and quality improvement systems and must modify these systems accordingly to improve the quality of services and of provider performance for JCMs.
**S4.1b** The DOH must annually evaluate the quality of providers' services and must promptly issue "provider report cards" that identify strengths, deficiencies, and remediation plans of the providers.
**S4.1c** The DOH must allow public access of the provider report cards.
**S4.1d** Increased transparency and accountability of providers' services must be measured by the Provider Selection Guide (a DOH publication).
**S4.1e** The DOH must review a provider more frequently in cases where there is evidence that the provider has an increased number of deficiencies or increasingly serious deficiencies.
**Component Manager**: DDSD Bureau of Systems Improvement Chief.

Court's Comments: Defendants believe that the JCA expands the purpose of Safety Objective S4.1 with her recommendation that the public have access to provider performance report cards. Defendants' Objections at 51–52 (S4.1). However, the Court finds that public access is part of the transparency and accountability expressly contemplated by Safety Objective S4.1. Although the JCA proposes several evaluative components directed at the use of measurable indicators, Safety Objective S5.1 addresses this same issue. *See* Safety Objective S5.1 and evaluative component S5.1a for the development of measurable indicators that address quality of provider performance. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

2. ***Safety Objective S4.2***
DOH response is proportionate to the seriousness of the contractor's alleged substandard performance when corrective action is not effectively implemented.

**S4.2a** Defendants must identify a contractor's deficiencies in cases where the contractor failed to effectively implement corrective action.
**S4.2b** Defendants must take remedial action proportional to the seriousness of the alleged substantial performance by a contractor that fails to effectively implement an identified corrective action.
**Component Manager**: Internal Review Committee Chair.

Court's Comments: The JCA's recommendation that "frequency and scope of reviews is dependent on the Provider's self-survey compared to the actual findings by QMB" is not clear. JCA's Formal Recommendations at 15 (S4.2c). Safety Objective S4.2 does not refer to a "review" or to a "self-survey." To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

J. **SAFETY GOAL 5**
Establish measurable indicators of quality and develop an integrated data collection system that collects, analyzes, and employs information from multiple sources to ensure that these quality indicators are met, the safety of Jackson Class Members is protected, and quality services are provided for Jackson Class Members.

1. ***Safety Objective S5.1***
Providers will use the identified performance indicators as part of their agency quality assurance system to improve quality.

**S5.1a** The DOH must establish measurable quality indicators, including (1) implementation of a QA/QI (Quality Assurance/Quality Improvement)

28

Plan, (2) implementation of ISPs, (3) analysis of General Events Reports data, (4) compliance with Caregivers Criminal History Screening requirements, (5) compliance with Employee Abuse Registry requirements, (6) compliance with DDSD training requirements, (7) patterns of reporting incidents, and (8) results of improvement actions taken in previous quarters, at the individual, program, and systems levels.
**S5.1b** The DOH must communicate these required measurable quality indicators to providers.
**S5.1c** Providers must use the required measurable quality indicators to improve the quality of their services to JCMs.
**S5.1d** The DOH must determine providers' compliance in using the measurable quality indicators through the use of QMB surveys for a fiscal year.
**Component Manager**: QMB Bureau Chief.

Court's Comments: The JCA's Formal Recommendations for Safety Objective S3.1 recite almost verbatim the proposed evaluative components for Safety Objective S5.1. JCA's Formal Recommendations at 11, 15–16. The Court avoids duplication of the final evaluative components in cases where the goals of certain Objectives may be similar. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

2.   *Safety Objective S5.2*
Use significant events reported through GER (General Events Reporting)--including use of emergency services, falls, medication errors, and law enforcement incidents -- to support DD system management, that includes responses to significant events.

**S5.2a** The joint DDSD and DHI Significant Events Committee, and the DDSQI Developmental Disabilities Supports Division Quality Improvement must routinely use the GER information (as defined by Safety Objective S5.2) to support DD system management.
**S5.2b** Defendants must use the GER information to identify the JCMs most at risk, to inform providers and regional Quality Assurance staff of JCMs most at risk, and to request the development and implementation of prevention plans specific to a JCM's identified risks.
**S5.2c** Defendants must provide DDSQI with significant event information found in electronic reporting through Therap GER for use by members of the joint DDSD and DHI Significant Events Committee in program development and improvement.
**S5.2d** The DOH must analyze significant event information, must identify undesirable trends or deficiencies in performance (e.g., failure to respond adequately to significant events), must develop remedial plans, and must evaluate effectiveness of remediation.
**Component Manager**: DDSD Deputy Director.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

3. **Safety Objective S5.3**
Implement a responsive and effective case management system as evidenced by the provision of needed supports and services.

**S5.3a** Case managers must demonstrate that they know the current strengths, needs, preferences, and medical conditions of the JCMs they serve through updating each JCM's ISP to address these factors.
**S5.3b** Case Managers must ensure that each JCM's ISP is properly implemented and should use the Omnicaid Claims Report to confirm that a JCM received the services identified on the ISP.
**S5.3c** Case Managers must identify significant risks, needed supports, and unmet needs for each JCM; must convene the IDT promptly whenever a JCM is at risk or a JCM's needs are not being fully addressed; must ensure that the JCM's needs are addressed; and must seek assistance from the DOH if the IDT is unable to adequately meet a JCM's needs.
**S5.3d** The DOH must monitor and evaluate the performance of each case management agency on an annual basis and must use its evaluation to determine whether the case management agency should be certified as a DD Waiver provider.
**Component Manager**: QMB Bureau Chief and Bureau of Systems Improvement Chief.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

4. **Safety Objective S5.4**
Develop and implement an effective, integrated DD Strategic Information Management System.

**S5.4a** The DOH must evaluate its integrated DD Strategic Information Management System, comprised of the electronic Health management System, DDSD (LTSD) reports, and HSD's (Human Services Department) Medicaid Management Information System (MMIS) (currently Omnicaid), in terms of that integrated system's capacity to use information through web-based reports for JCMs.
**S5.4b** The DOH must make DDSD (LTSD) reports available as web-based reports.
**S5.4c** The DOH must ensure that the "ad-hoc reports pulled from HSD's MMIS" are available from DDSD.
**S5.4d** The DOH must transition the "Therap reports on Provider Compliance" to DDSD. (If this does not reflect Defendants' proposed

evaluative component, which may not have been complete or clear, Doc. No. 2022 at 58, Defendants should correct evaluative component S5.4d as needed.)

**S5.4e** Defendants must evaluate the usefulness and gaps in the above-described data collection system and must modify or update the system where practicable.

**Component Manager**: DDSD Bureau of Systems Improvement Chief.

Court's Comments: The JCA recommends that the DOH develop and operate "a computerized and integrated data management system that collects, analyzes, and employs information from all available data sources, including HSD's Medical Assistance Division, QMB findings, DDSD quality assurance reviews of ISPs, incident report data, IMB investigation data, mortality/morbidity information, GER information, Community Practice Review findings, RORIs (Regional Requests for Intervention), SSRs (Speciality Service Reports), IRC (Internal Review Committee) data, DDSQI reports, federal Center for Medicare and Medicare Services, and DDSD Regional Office technical assistance information" so that "administrators" have information about provider performance at all levels. JCA's Formal Recommendations at 17. Defendants argue that "integrating IT systems" as recommended by the JCA is a high risk effort and not in the best interests of the JCMs. Defendants' Objections at 59. Defendants contend that this type of project has a high failure rate even after a prolonged effort and the expenditure of a lot of money. Defendants further assert that designing and implementing an integrated computerized analysis system, as contemplated by the JCA, can only be accomplished if the data sets are consistent. Data pertaining to JCMs is qualitative or text-based rather than quantitative or numerical.

The JCA envisions an integrated computerized database that might greatly assist the administration of services to the JCMs. However, the reality is that such a system likely cannot be developed and implemented within the lifetimes of the dwindling class members. *See R.C. ex rel. Alab. Disabilities Advocacy Project v. Walley*, 270 F. App'x 989, 993 (11th Cir. Mar. 27, 2008) ("[f]ederal courts should not be in the business of running important functions of state government for decades at a time") (citation omitted). Moreover, the Court already requires sufficient data collection and reporting by Defendants as to specific plans and Objectives. The Court adopts Defendants' evaluative components without using the percentile thresholds. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

## SUPPORTED EMPLOYMENT PLAN

A. **SUPPORTED EMPLOYMENT GOAL 1**
   People who want to work will work.

1. ***Supported Employment Objective SE 1.1***
   Achieve an annual increase of Jackson Class Members working "at criteria," in accordance with information gathered regarding the Jackson Class Members' abilities and desires to be employed, and the guardians' positions on employment of the Jackson Class Members. Defendants must provide technical, supported employment assistance to the Jackson Class Members and support for teams to assist all qualified and willing Jackson Class Members to obtain "at criteria" employment.

   **SE1.1a** Defendants must obtain current statistics on JCMs who are not working at criteria, but who wish to work and are capable of working at criteria, provided the JCMs' guardians support working at criteria.
   **SE1.1b** Defendants must provide technical vocational assistance and support through job developers and job coaches for all JCMs identified in SE1.1a.
   **SE1.1c** Defendants must achieve an annual increase in the number of JCMs working at criteria, consistent with SE1.1a.
   **SE1.1d** Defendants must provide technical assistance to JCMs and their teams to obtain jobs for JCMs consistent with the federal definition of Supported Employment.
   **Component Manager**: DDSD Supported Employment Lead.

   Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

2. ***Supported Employment Objective SE 1.2***
   Defendants will increase the number of qualified providers statewide in order to increase the number of Jackson Class Members earning minimum wage or better, and to increase the average number of hours per week worked by Jackson Class Members. Defendants will develop a plan with time lines to provide quality supported employment at criteria to all priority class members who are determined to be appropriate for work.

   **SE1.2a** Defendants must develop a written strategy and process to recruit and retain qualified employment providers for all JCMs who wish to and are able to work at criteria, with their guardians' consent.
   **SE1.2b** Defendants must provide a current written list of qualified employment providers to JCMs and their guardians.

**SE1.2c** Defendants must use the list of qualified employment providers to increase the number of JCMs earning minimum wage or better and to increase the number of hours per week worked by JCMs.

**SE1.2d** Defendants must create and must disseminate a timeline with target dates for the employment at criteria of all JCMs who wish to work, who can work, and who have the consent of the guardians to work at criteria.

**SE1.2e** Defendants must maintain and must report annual statistics on the number of (1) JCMs who wish to work at criteria, (2) JCMs who can work at criteria with their guardians' consent, and (3) JCMs who are working at criteria. Defendants must correlate these annual statistics with the target dates in the timeline.

**Component Manager**: DDSD Deputy Director.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

3. ***Supported Employment Objective SE 1.3***
Personnel who develop or implement career development plans will receive and pass competency based training based on DDW standards on career development planning.

**SE1.3a** Defendants must develop competency based training on DDW standards for career development planning.

**SE1.3b** Personnel must have satisfactorily passed competency based training on DDW standards for career development planning before providing career development planning to JCMs and their guardians.

**Component Manager**: DDSD Deputy Director.

Court's Comments: The JCA recommends that Defendants develop or recruit employment providers for JCMs, but that requirement is addressed under Supported Employment Objective SE1.2. The JCA also proposes that Defendants fund certain entities to provide vocational assistance to JCMs. JCA Formal Recommendations at 19 (SE1.3b, SE1.3c). That recommendation is outside the scope of Supported Employment Objective SE1.3. To the extent the Court's final evaluative component is inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

4. ***Supported Employment Objective SE 1.4***
Increase capacity to create traditional and non-traditional paths to employment.

**SE1.4a** The DDSD Deputy Director must develop an approved action plan to deploy an SE expert or experts to work with qualified employment

providers to increase the number of traditional and non-traditional employment opportunities for JCMs to work at criteria.

**SE1.4b** Defendants, through Partners for Employment, must deliver customized employment training to qualified employment providers in reference to employment of JCMs at criteria.

**SE1.4c** Defendants must use funding available through the IGA for the development of JCMs' vocational assessment profiles (VAPs).

**SE1.4d** Defendants must demonstrate through annual statistics that they have increased the capacity to provide traditional and non-traditional paths for employment of JCMs at criteria.

**Component Manager**: DDSD Deputy Director.

Court's Comments: Some of the JCA's Formal Recommendations are unclear. Defendants object to the JCA's recommendation that "DD Waiver provider agencies have successfully completed competency-based training recommended by the Jackson Employment Expert and provide traditional and non-traditional paths to employment." JCA's Formal Recommendations at 19 (SE1.4c). Defendants argue the proposed strategy has had limited success and that the DOH field data does not indicate training will support this component. Defendants' Objections at 63 (SE1.4). The Court does not have sufficient information to evaluate the possible usefulness of the JCA's Formal Recommendation. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

5. ***Supported Employment Objective SE 1.5***

Individual records (including ISPs) of Jackson Class Members will contain accurate employment plans that include information about the Jackson Class Members' desires to work, the Jackson Class Members' skills for existing jobs, and whether the guardians want the Jackson Class Members to work.

**SE1.5a** Defendants, through appropriately trained personnel, must update each JCM's ISP with a current and accurate employment plan, including information about the JCM's employment goals and whether the JCM wishes to work, has skills for existing work, seeks traditional or non-traditional work, and has the guardian's consent to work.

**Component Manager** DDSD Supported Employment Lead.

Court's Comments: To the extent the Court's final evaluative component is inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

6.      ***Supported Employment Objective SE 1.6***
When there is a change in an individual's life that impacts their employment status, the team will meet within 10 days and take action to minimize the disruption to the class member's employment.

**SE1.6a** Defendants must have a system in place to minimize the disruption to a JCM's employment when a JCM suffers a "life change" (hospitalization, significant health status change, relocation to another city, loss of employment).
**SE1.6b** Defendants must promptly document any life change for a JCM in appropriate forms, including Case Management Site Visit Forms and IDT Meeting minutes.
**SE1.6c** The JCM's team must meet within ten (10) days of a JCM's life change to take approved actions to minimize a disruption in the JCM's employment.
**Component Manager**: DDSD Supported Employment Lead.

Court's Comments: Defendants appear to object to the requirement that action be taken within 10 days of a JCM's life change. Defendants' Objections at 65. Defendants state, for example, that the events that could impact a JCM's employment status may not be known to the case manager within 10 days of a particular event. Thus, Defendants decided that the mandatory case management visits that occur twice a month would identify any issue within a sufficient time frame for the team to act. To the extent that Defendants object to the use of a 10-day deadline, the Court overrules that objection. The Court's earlier Order and related Table reflected that the parties agreed to the language of Supported Employment Objective SE1.6. Doc. 1996, Table I. The Court does not use the JCA's Formal Recommendations, which essentially repeat the elements of the Objective. To the extent the Court's final evaluative components are inconsistent with Defendants' other proposals, the Court overrules Defendants' Objections.

B.      **SUPPORTED EMPLOYMENT GOAL 2**
Every class member will have access to a quality network of providers throughout the state.  Providers who cannot achieve work goals are eliminated.

1.      ***Supported Employment Objective SE2.1***
Qualified regional providers will be available in each region for each individual seeking employment.

**SE2.1a** Defendants must develop a process to produce a list of qualified employment providers in all regions of the State for JCMs who seek employment.

**SE2.1b** Defendants must create written standards that qualified employment providers must meet, including standards addressing employment goals for JCMs.

**SE2.1c** Qualified employment providers that do not meet Defendants' standards must be placed on probation for a period not to exceed six (6) months. If a qualified employment provider does not meet Defendants' standards by the end of the probationary period, Defendants must eliminate that employment provider from the list.

**SE2.1d** Defendants must ensure that JCMs in every region of the State have some choice of qualified employment providers. Defendants need not provide qualified employment providers in regions of the State where there are no JCMs who seek employment.

**Component Manager**: DDSD Deputy Director.

Court's Comments: Defendants argue that the JCA's Formal Recommendation that JCMs have a choice of qualified providers is a "major expansion" of Supported Employment Objective SE2.1. Defendants' Objections at 66 (SE2.1). The Court disagrees. Supported Employment Objective SE2.1 specifically requires a "quality network of providers." (emphasis added). The term "network" implies that JCMs will have some choice of quality employment providers. The JCA also recommends that "providers who fail to achieve work goals" should not be considered "qualified." JCA's Formal Recommendations at 20 (SE2.1b). The meaning of "work goals" in the JCA's recommendation is not clear. In addition, Supported Employment Objective SE2.6 addresses almost this same issue–"Increase the number of qualified providers statewide. Qualified employment providers are defined as those that get [JCMs] jobs in the community, [help JCMs] maintain jobs[,] and help [JCMs] with career advancement." If the JCA and the parties wish to include this definition of "qualified [employment] providers" in a final evaluative component, they may agree to do so. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

2.   ***Supported Employment Objective SE2.2***
Defendants will implement the Employment First Policy that explicitly sets forth the role and importance of employment, as well as expectations for employment, in a Jackson Class Member's life.

**SE2.2a** The DOH must develop and must implement an Employment First Policy consistent with professionally accepted standards of practice that apply to a JCM.

**SE2.2b** The Employment First Policy must set forth in writing the role and importance of employment for a JCM and a JCM's expectation of employment.

**SE2.2c** The DOH must make available to a JCM and the JCM's family and guardian information on how to obtain vocational assistance, vocational assessment, assistance for non-traditional employment, and DVR services.

**Component Manager:** DDSD Supported Employment Lead.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

3.    *Supported Employment Objective SE2.3*

Clarify what the employment first principle means in terms of day-to-day practice for all stakeholders (people with disabilities, family members, providers, guardians, advocates, case managers, DDSD, DVR, Partners for Employment).

**SE2.3a** Defendants must communicate to stakeholders, including pertinent agency personnel, the meaning of New Mexico's Employment First Policy as it relates to day-to-day practice and assistance to JCMs and their guardians.

**SE2.3b** Defendants must communicate information about New Mexico's Employment First Policy through formal training sessions, delivery of written materials, or other outreach efforts.

**SE2.3c** Defendants must use the proposed Communication Matrix—which contains columns indicating audience size, frequency of event, method of communication, key message delivered, and date of communication—to identify communications about New Mexico's Employment First Policy.

**Component Manager**: DDSD Supported Employment Lead.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

4.    *Supported Employment Objective SE2.4*

Identify quality employment providers based on employment outcome data.

**SE2.4a** Defendants must measure qualified employment providers through employment outcome data that includes each JCM's name, start and end date of each job, employer of record, wages earned, hours worked, and summary of qualified employment providers' assistance.

**Component Manager**: DDSD Deputy Director.

Court's Comments: There is some overlap between Supported Employment Objectives SE1.2 and SE2.4. The Court does not repeat in SE2.4 final evaluative components that are found under Supported

Employment Objective SE1.2. To the extent the Court's final evaluative component is inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

5. ***Supported Employment Objective SE2.5***
Review CPR and other employment data.  Analyze data and use the resulting information annually to help make improvements to the employment system and improve provider performance.

**SE2.5a** Defendants must maintain and must analyze current employment data and the CPR.
**SE2.5b** Defendants, through the Statewide Supported Employment Lead or the Jackson Employment Expert, must use the resulting information to enhance employment outcomes for JCMs.
**Component Manager**: DDSD Deputy Director.

Court's Comments: Defendants do not clearly object to the JCA's Formal Recommendations at 22 (SE2.5a and SE2.5b), but state that Defendants have already established the initiative that is addressed by the JCA's proposals. Defendants' Objections at 70 (SE2.5). To the extent that the Court's final evaluative components do not fully capture the parties' intent with respect to Supported Employment Objective SE2.5, the JCA and the parties should confer and agree on appropriate final evaluative components. Where the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

6. ***Supported Employment Objective SE2.6***
Increase the number of qualified providers statewide. Qualified providers are defined as those that get people jobs in the community, maintain jobs and help individuals with career advancement.
**Component Manager**: DDSD Deputy Director.

Court's Comments: Supported Employment Objectives SE1.1 and SE1.2, along with other SE Objectives, already address the substance of Supported Employment Objective SE2.6. There is no need to add additional, final evaluative components to Supported Employment Objective SE2.6.

7. ***Supported Employment Objective SE2.7***
CMs will demonstrate competence in facilitating IDTs regarding employment outcomes for class members. Competence will be demonstrated by passing competency based training regarding DOH employment policies.

**SE2.7a** DOH, in consultation with the Jackson Employment Expert, must provide competency-based training for all JCM case managers.
**SE2.7b** DOH must identify JCM case managers who have not passed the competency-based training and must take appropriate actions until the case managers are successful.
**Component Manager**: DDSD Supported Employment Lead.

Court's Comments: Defendants state they have already developed, in consultation with the Jackson Employment Expert, the competency-based training for JCM case managers. Defendants' Objections at 72 (SE2.7). Defendants do not clearly object to the JCA's Formal Recommendations, which the Court adopts with minor changes. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

8.   ***Supported Employment Objective SE2.8***
DOH will disseminate information to CM[s], Providers and IDTs regarding strategies for overcoming identified barriers to employment and will promote use of the RORI system by CMs, providers and IDTs to seek assistance from DOH when they encounter obstacles related to employment. DOH will review and use the information from the RORIs at least annually.

**SE2.8a** The DOH must collect annual data and information useful in identifying barriers to employment and in developing strategies for overcoming barriers to employment for JCMs. The data and information may include CPRs, RORIs, and input from JCMs, JCMs' families and guardians, case managers, providers, DDSD personnel, DVR personnel, and advocates.
**SE2.8b** The DOH must disseminate the information addressed in SE2.8a to case managers, providers, JCMs, guardians, and IDTs.
**SE2.8c** The DOH must collect RORI information on an annual basis and must promote RORI use to identify barriers that JCMs encounter in obtaining employment.
**Component Manager**: DDSD Supported Employment Lead and Assistant Regional Office Bureau Chief.

Court's Comments: Some of the JCA's Formal Recommendations fall outside the scope of Supported Employment Objective SE2.8. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

9.   ***Supported Employment Objective SE2.9***
Qualified employment providers have capacity to do individualized job development.

**SE2.9a** Defendants must provide adequate training for providers that are unable to perform the individualized job development.
**Component Manager**: DDSD Deputy Director.

Court's Comments: To the extent the Court's final evaluative component is inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

10. ***Supported Employment Objective SE2.10***
Qualified employment providers have the capacity to provide individualized job supports to JCMs.

**SE2.10a** Defendants must identify employment positions for JCMs who need job supports to ensure that providers can supply the required job supports to JCMs.
**Component Manager:** DDSD Deputy Director.

Court's Comments: Defendants state that this Objective is satisfied "by the identification of providers where lack of capacity is a contributor to performance of individualized job supports." Defendants' Objections at 76 (SE2.10). The language "contributor to performance of individualized job supports" is unclear. In addition, the Court observes that the JCA regularly refers to the Jackson Employment Expert as someone who can assist in satisfying Supported Employment Objectives. In contrast, Defendants state that the Jackson Employment Expert lives in Georgia, is employed full time as the Director of Georgia Protection and Advocacy, does not work exclusively in the field of employment, and has informed Defendants that she is not available to travel to New Mexico as requested to perform activities in both Appendix A and the scope of her contract. *Id.* Defendants urge the use of the Statewide Supported Employment Lead, who Defendants assert has skills equivalent to the Jackson Employment Expert and who also has the advantage of current field data. The Court directs the JCA and the parties to confer and decide which professional will perform the required activities. The parties may amend these final evaluative components as needed. To the extent the Court's final evaluative component is inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

11. ***Supported Employment Objective SE2.11***
Provider agencies use outcome data to improve practice.

**SE2.11a** Defendants must identify outcome data related to employment of JCMs that will assist provider agencies to improve their services to JCMs. That data may include information concerning provider agencies that are successfully developing jobs for JCMs at criteria or above criteria, provider agencies that are successfully supporting JCMs in maintaining

community based jobs at criteria or above criteria, and provider agencies that are enabling JCMs to work more hours, receive higher wages, and obtain greater levels of social integration.

**SE2.11b** Defendants must disseminate to provider agencies annual outcome data that Defendants deem helpful for use by provider agencies to improve services to JCMs.

**SE2.11c** Provider agencies must use "the required QA/QI agency plan in regards to ISP implementation specific to Supported Employment."

**Component Manager**: DDSD Supported Employment Lead.

Court's Comments: While the Court adopts Defendants' proposed component regarding implementation of the QA/QI agency plan, the Court does not know how it directly relates to Supported Employment Objective SE2.11. The JCA and the parties should work together to agree on the final evaluative components for this Objective so that the language is clear and avoids repetition of final evaluative components included under other Objectives. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

C.   **SUPPORTED EMPLOYMENT GOAL 3**
Provide a reliable available form of targeted technical assistance to providers of supported employment based on all provider reviews.

1.   ***Supported Employment Objective SE3.1***
Defendants will inform employment providers where to refer Jackson Class Members for a complete, person-centered vocational assessment, and employment providers will understand the requisite elements of a person-centered vocational assessment as defined by Defendants.

**SE3.1a** Defendants must identify appropriate tools, e.g., the "Assessment Toolkit," for employment providers, including information about where to refer JCMs for a complete person-centered vocational assessment.

**SE3.1b** Defendants must develop training on how to use the Assessment Toolkit, and DDSD Supported Employment Coordinators and other pertinent staff must receive that training.

**SE3.1c** Defendants must provide training to employment providers on how to use the Assessment Toolkit.

**SE3.1d** Defendants must inform employment providers that they may schedule follow-up meetings with Defendants about the use of the Assessment Toolkit.

**Component Manager**: DDSD Deputy Director.

Court's Comments: The JCA recommends that Defendants identify providers in each region of the State that are capable of developing a "complete, person-centered, vocational assessment." JCA's Formal

41

Recommendations at 24 (SE3.1a). Other Supported Employment Objectives already address the JCA's Formal Recommendations for this Objective. *See* SE2.1 ("Qualified regional providers will be available in each region for each individual seeking employment"); SE2.9 ("Qualified employment providers have capacity to do individualized job development"). The JCA recommends that Defendants make quarterly determinations regarding whether the vocational assessments include the requisite elements. This is beyond the scope of Supported Employment Objective SE3.1. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

2. ***Supported Employment Objective SE3.2***
IDTs are informed about the importance of accommodations to increase independent performance in the workplace.

**SE3.2a** IDTs, case managers, and qualified employment providers must understand, through training and written communications, the importance of accommodations, supports, and assistive technology for a JCM so as to maximize a JCM's independent performance in the workplace.
**SE3.2b** IDTs, case managers, and qualified employment providers must understand, through training and written communications, the availability of accommodations, supports, and assistive technology for use by a JCM in the workplace.
**SE3.2c** Defendants must document the transmittal of information about the importance of accommodations and supports for a JCM to IDTs, case managers, and qualified employment providers.
**Component Manager**: DDSD Supported Employment Lead.

Court's Comments: Although the Court includes requirements related to "qualified employment providers" under this Objective, Supported Employment Objective SE2.10 ("Qualified employment providers have the capacity to provide individualized job supports to JCMs") overlaps somewhat with Supported Employment Objective SE3.2. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

3. ***Supported Employment Objective SE3.3***
Use the statewide employment institute to provide training and technical assistance to the field to advance employment opportunities for class members.

**SE3.3a** The DOH and University of New Mexico must have a formal agreement that requires Partners for Employment to respond to requests for employment information and consultation.

**SE3.3b** Partners for Employment must provide training, technical assistance, information, and support to employment providers, JCMs and their families and guardians, and the IDTs in order to advance employment opportunities for JCMs.

**SE3.3c** Defendants must report quarterly the requests for information about employment, training, technical assistance, consultation, and support made to Partners for Employment that it provided regarding JCMs.

**SE3.3d** Defendants' quarterly reports must disclose Partners for Employment's success rate in assisting the advancement of employment opportunities for JCMs.

**Component Manager**: DDSD Supported Employment Lead.

Court's Comments: *See* Court's Comments to Supported Employment Objective SE3.6. To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

4. *Supported Employment Objective SE3.4*
DDSD will provide technical assistance to teams as requested for individuals whom they support to access employment opportunities.

**SE3.4a** DDSD must identify necessary technical assistance and information to provide to IDTs and JCMs and their guardians for purposes of responding to JCMs' employment inquiries and issues.

**SE3.4b** DDSD must respond to inquiries about employment opportunities and provide appropriate job-related technical assistance and information that may include job coaching, mentoring, and problem solving to IDTs and JCMs and their guardians.

**Component Manager**: DDSD Assistant Regional Office Bureau Chief.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

5. *Supported Employment Objective SE3.5*
UNM/CDD Partners for Employment will provide training for people with disabilities, family members, providers, guardians, advocates, case managers, DDSD and DVR consistent with the Employment First Principle.

**Component Manager**: DDSD Supported Employment Lead.

Court's Comments: *See* Court's Comments to Supported Employment Objective SE3.6.

43

6. ***Supported Employment Objective SE3.6***
Defendants will provide training to employment providers and case managers on evidence based practices in Supported Employment.
**Component Manager:** DDSD Supported Employment Lead.

Court's Comments: The Court requires the JCA and the parties to address Supported Employment Objective SE3.3 and Supported Employment Objective SE3.5 with Objective SE3.6 in order to present one set of final evaluative components for the three Objectives. It is clear from the JCA's and Defendants' proposed evaluative components that all three Supported Employment Objectives contemplate Defendants' relationship with Partners for Employment, along with services by Partners for Employment and the Employment First Principle. There is no need to have three separate Supported Employment Objectives that address the same relationships, services, and training. The JCA and the parties may re-number the Supported Employment Objectives as needed.

7. ***Supported Employment Objective SE3.7***
The appropriate Defendant will work with Partners for Employment (formerly known as Employment Institute) to maintain an ongoing learning collaborative.

**SE3.7a** Defendants must continue to fund and support Partners for Employment in accordance with an active formal agreement between DDSD and UNM, pertinent state procurement rules, and funding appropriated by the state legislature.
**SE3.7b** The Partners for Employment program is intended to provide a learning collaborative that enhances employment opportunities for JCMs.
**SE3.7c** Defendants must annually evaluate the outcomes and efficacy of Partners for Employment as the program relates to employment services for JCMs.
**SE3.7d** Defendants must communicate the results of the annual evaluation with Partners for Employment.
**Component Manager**: DDSD Supported Employment Lead.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

D. **SUPPORTED EMPLOYMENT GOAL 4**
Assist class members to have meaningful lives.

1. ***Supported Employment Objective SE4.1***
Class members are able to explore community work experiences including job sampling, trial work experiences and volunteering.

**SE4.1a** Defendants must identify JCMs who wish to do job sampling, trial work, or volunteering, provided the JCMs have their guardians' consent to do this type of work.

**SE4.1b** Defendants must identify processes that encourage job sampling, trial work experience, and volunteer opportunities for JCMs identified in SE4.1a.

**SE4.1c** Defendants must communicate processes identified in SE4.1b to JCMs and their guardians, IDTs, case managers, and qualified employment providers.

**SE4.1d** Defendants must ensure that there are qualified employment providers in each region that will afford opportunities for job sampling, trial work experiences, and volunteer opportunities for JCMs identified in SE4.1a.

**Component Manager**: DDSD Supported Employment Lead.

Court's Comments: To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

2.   ***Supported Employment Objective SE4.2***
Decrease the amount of time class members spend in congregated, segregated settings for persons with D/D and work with IDTs to promote participation in community activities and generic resources that are comparable to those used by non-disabled persons of the same age.

**SE4.2a** Defendants must identify JCMs who are working in "congregated, segregated settings for persons with D/D" and who do not wish to be in these work settings.

**SE4.2b** For those JCMs identified in SE4.2a, Defendants must take steps to decrease the amount of time the JCMs spend in congregated, segregated work settings, provided the JCMs' guardians agree.

**SE4.2c** Defendants must provide education and competency-based training to IDTs and pertinent personnel concerning the importance of having JCMs participate in integrated community activities (in relation to work) and reducing the time spent by JCMs in congregated, segregated work settings.

**SE4.2d** Defendants must annually identify and monitor those JCMs who wish to reduce time spent in congregated segregated work settings and those JCMs who spent reduced hours in congregated, segregated work settings.

**Component Manager**: DDSD Supported Employment Lead.

Court's Comments: The Court narrowed some of the language in the final evaluative components to "work settings" because this is an Objective that relates to the JCM's employment. To the extent the JCA and parties wish to include broader language, it should be placed under more appropriate

45

Health Goals and Objectives. The Court does not understand the reference to "meaningful day lead" in Defendants' proposals. Defendants' Objections at 87. Similarly, the Court does not understand the JCA's reference to "CMS HCBS settings guidance pertaining to waiver funded presumptively isolating and segregating services." JCA's Formal Recommendations at 27 (SE4.2a).To the extent the Court's final evaluative components are inconsistent with Defendants' proposals, the Court overrules Defendants' Objections.

### Conclusion

Defendants must demonstrate sustained substantial compliance with all of the final evaluative components for the Health, Safety, and Supported Employment Objectives set out in this Order. *See* Table IV (attached).[6]

The JCA and the parties should work with Chief Magistrate Judge Karen B. Molzen to prepare a comprehensive list of outstanding obligations, including the final evaluative components and obligations in Table II to the MEMORANDUM OPINION AND ORDER (Doc. No. 1996), with a timetable of realistic dates for completion of all outstanding obligations. The parties should file the comprehensive list of outstanding obligations and the timetable by May 15, 2015.

If necessary, the JCA and the parties should also address with Chief Magistrate Judge Molzen the issue of sustained substantial compliance and the period of time deemed sufficient to show sustainability.

**IT IS ORDERED THAT:**

(1) the parties must file an Amended Table IV by **May 1, 2015**;

(2) the parties must file a comprehensive list of outstanding obligations and the timetable by **May 15, 2015**; and

---

[6] Should the JCA and the parties agree to amend the final evaluative components for Safety Objective 5.4 and Supported Employment Objectives SE2.1, SE2.5, SE2.10, SE2.11, SE3.3, SE3.5, and SE3.6, and SE 4.2 they should file an Amended Table IV by May 1, 2015.

(3) Defendants must demonstrate sustained substantial compliance with all of the final

evaluative components for the Health, Safety, and Supported Employment Objectives

set forth in this opinion.

_____
SENIOR UNITED STATES DISTRICT JUDGE