# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

WALTER STEVEN JACKSON, et al.,

                Plaintiffs,

vs.                                            No. CIV 87-839 JAP/KBM

LOS LUNAS CENTER, et al.,

                Defendants,

and

THE ARC OF NEW MEXICO,

                Intervenor,

and

MARY TERRAZAS, et al.,

                Intervenors, pro se.

## MEMORANDUM OPINION AND ORDER

DEFENDANTS' OPPOSED MOTION AND MEMORANDUM IN SUPPORT SEEKING PARTIAL DISENGAGEMENT OF CONTINUOUS IMPROVEMENT (Motion) (Doc. No. 2058) seeks disengagement of their obligations in Paragraphs 35 D Metro Region and 35 C Southeast Region (Continuous Improvement) of the Joint Stipulation on Disengagement. PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DISENGAGEMENT MOTION NO. 2053 (Response) (Doc. No. 2074) admits that Defendants have satisfied the requirements of ¶ 35 D Metro Region[1] but argues that Defendants "have not come close to complying with the

---

[1] The Court already entered a STIPULATED ORDER FOR PARTIAL DISENGAGEMENT OF CONTINUOUS IMPROVEMENT ADEQUATE USE OF GENERIC SERVICES PARAGRAPH 35D METRO REGION. (Doc. No. 2069).

requirements" of ¶ 35 C Southeast Region (¶ 35 C). In their REPLY IN SUPPORT OF MOTION

SEEKING PARTIAL DISENGAGEMENT OF CONTINUOUS IMPROVEMENT (Reply)

(Doc. No. 2077), Defendants state the reasons why they believe the ¶ 35 C obligations are

satisfied and should be disengaged.

**Background**

I.    General History of Proceeding

This 28-year-old class action lawsuit is difficult to summarize. Plaintiffs, a group of

formerly institutionalized developmentally disabled persons, were certified as a class and were

ultimately successful on their claims. *See* December 28, 1990 Memorandum Opinion and Order

(Doc. No. 679) (finding constitutional and statutory violations in Defendants' operation of Fort

Stanton Hospital and Training School and Los Lunas Center for Persons with Developmental

Disabilities and in Defendants' community service system for persons with developmental

disabilities). In the remedial stage of this lawsuit, Defendants are obligated to take certain actions

to correct identified deficiencies in healthcare, safety conditions, and other areas. The Court will

continue to oversee this proceeding until Defendants have demonstrated sustained substantial

compliance with all of the outstanding obligations.[2] For a more detailed explanation of this

lawsuit, *see* the "Background" section of the September 1, 2014 MEMORANDUM OPINION

AND ORDER (Doc. No. 1996) and the "Background" section of the October 12, 2012

FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER (Doc. No. 1930).

On December 19, 1997, in response to compliance issues, the Court entered an ORDER

APPROVING STIPULATION ON DISENGAGEMENT (Doc. No. 1064), which approved what

---

[2] *But see* DEFENDANTS' VERIFIED RULE 60(b)(5) MOTION AND SUPPORTING MEMORANDUM TO
TERMINATE ALL REMAINING ORDERS IN JACKSON et al. v. FSH&TS et al. (Doc. No. 2053) (arguing, in
part,  that the Court should terminate all remaining orders in this case because of "changed factual conditions."). The
Court will address Defendants' Rule 60(b)(5) Motion in a separate opinion.

is known as the JOINT STIPULATION ON DISENGAGEMENT or the JSD. The JSD's purpose was to "define[] the further actions and requirements which the defendants must complete and the services, supports, and benefits which must be provided to classmembers in order for the defendants to comply with their obligations to classmembers under the Court's orders in this case." Doc. No. 1930 at 11; *see also* JSD ¶ 5. The JSD requires "Defendants to 'demonstrate continued improvement by region' of individual service planning and supports, behavior supports and supported employment, 'as determined by the community audit.'" Doc. No. 1930 at 13.

II.      JSD Disengagement Process

The JSD sets out a "Disengagement Process" to be used when a party seeks disengagement or termination of the Court's oversight of certain obligations. JSD ¶¶ 40–49. Paragraph 45 of the JSD states:

> The defendants may file a motion at any time requesting the Court to find that they have complied with any particular provision of this Stipulation, or an appendix or desired outcome…. Proof that all of the activities set forth in an appendix or outcome of the [POA] have been implemented shall constitute a rebuttable presumption that the desired outcomes have been implemented.

The JSD disengagement process requires that Defendants write Plaintiffs a "Paragraph 44 Letter" to give written notice of Defendants' intention to file a "Paragraph 45 Motion for Disengagement." JSD ¶¶ 44, 45.

Defendants sent Plaintiffs the ¶ 44 Letter, and Plaintiffs responded by stating they opposed disengagement. Motion at 2. Thus, Defendants filed the present motion seeking to disengage the ¶ 35 C requirements.

III.    Paragraph C Southeast Region Continuous Improvement Obligations and Requirements

The JSD, ¶ 35 C, reads: "The Department will continually improve service planning for class members and will achieve the level of improvement set forth in ¶¶ 32-33 … so that all class members: … c. receive services and supports recommended in the ISP."

Paragraph 32 of the JSD states:

> The Department will demonstrate continued improvement by region in the provision of services to classmembers with respect to those items specified in ¶¶ 35-37 [Individual Service Planning and Supports, Behavioral Supports, and Supported Employment], as determined by the community audit. For purposes of this section, continued improvement means either: (1) an increase in compliance of 15% for each of three years beginning with the 1998 audit with respect to those items which remain below 50% of full compliance; or (2) an increase of 10% for each of three years with respect to those items which remain above 50% of full compliance. In no event shall the Department have to exceed 80% for any single item in any region.

Paragraph 33 of the JSD states in part:

> If the level of improvement for a particular item in one region in a given year exceeds the level of required improvement for that item in that region for three years, the Department will have met the required continued improvement level for that item in that region. In that event, the Department will substantially maintain that level of compliance for an additional year.

Based on the briefing, the parties appear to agree that the pertinent JSD paragraphs require Defendants to attain a goal of 80% with respect to the disputed continuous improvement obligations. *See* Motion at 6 ("Defendants have exceeded the goal of 80% ...."); Response at 6 (discussing establishment of "benchmark of 80% as the agreed upon cap for measuring compliance with the ISP").

**Parties' Positions**

Defendants present a graph showing the percentages of their increases of services and supports in the area of Individual Services Planning (ISP) to classmembers from 1998 to 2014. Motion at 6. They argue that they have exceeded the goal of 80% on four separate occasions – 100% in 1999, 94% in 2007, 81% in 2009, and 88% in 2010. From 2004 to 2013, these increases ranged from a low of 40% to 77%. However, the percentages of increases of services in many years (2001–2006) are between 50% and 60%. Defendants contend that since 2004, there has been a steady increase and that in recent years (2012–2014), they have scored near the 80% goal with percentages of 73%, 77%, and 73% respectively. Defendants represent that over the last five years, they have maintained an average score of 75% and that there have not been any significant drops within the last three years. Motion at 6.

Although Defendants cannot claim to have met the requirements of JSD ¶¶ 32 by achieving an increase of services of 10% to 15% for three <u>consecutive</u> years, Defendants criticize the JSD formula for determining compliance arguing that it is "complicated and subject to alternative interpretations." Motion at 3. Defendants state, for example, that despite the JSD language in ¶ 32, "Plaintiffs have argued that the standard for disengagement requires increases of ten or fifteen percentage points as opposed to increases of ten or fifteen percent;[3] and that the standard for disengagement requires such increases to be met in three consecutive years rather than in any three years that followed the 1998 Audit. *Id.* According to Defendants, the parties also debate whether the baseline year is 1998. *Id.*

Defendants refer to earlier motions to disengage continuous improvement obligations that the Court has granted, and specifically to a hearing that the Court held on April 12, 2001.

---

[3] The Court is unable to understand the distinction between increases of 10 to 15 percentage points versus increases of 10 to 15%.

Transcript of 4/12/01 hearing (Doc. No. 1960, filed 9/4/01). Defendants argue that "[a] number of concepts and guiding principles can be distilled from the April 2001 hearing interpreting the disengagement formula for Continuous Improvement." Motion at 4. These concepts or principles are: 1) the Court will be reluctant to grant disengagement when there is a precipitous drop, e.g., of 15% or more, from one year to the next; 2) even if there is a precipitous drop, the Court will grant disengagement if the score remains significantly above the goal; and 3) even if there is a drop below the goal, the Court may grant disengagement when the drop below the goal was not precipitous and the score was relatively close to the goal. Defendants also rely on Plaintiffs' statement that they intend to be fairly flexible in their approach to compliance. *Id.* Finally, Defendants maintain that the concept of substantial compliance is not susceptible to a precise mathematical calculation.

Plaintiffs do not agree that Defendants have substantially complied with the requirements of ¶ 35 C. According to Plaintiffs, if the Court accepts Defendants' position, classmembers would be deprived of "one of the primary benefits of the [JSD], by allowing the [D]efendants to disengage from their responsibilities to continuously improve certain core services for class members without achieving compliance." Response at 1–2. Plaintiffs represent that the establishment of specific compliance goals "was designed to rectify long-standing deficiencies which the [P]laintiffs have endured since the case was filed [in 1987] and to constitute reasonable assurances that the improvements in the community services system will continue after the Court terminates its oversight of these provisions." *Id.* at 2. Stated differently, Plaintiffs contend that there was a reason for "linking compliance with objective, numerical standards that increase over time." *Id.*

Plaintiffs' interpretation of JSD's ¶ 32 is that "in each successive year after 1997, the [D]efendants increase compliance by either 10% or 15%, for three consecutive years." *Id.* at 3. Plaintiffs argue that under the wording of ¶ 35 C, Defendants have not achieved the required percentage increase for the required period. "The baseline for [¶] 35 C in 1998 was 68% and the overall percentage of compliance achieved in 2015 was 73%." *Id.* Based on Defendants' failure to achieve the required increase for a continuous period, Plaintiffs are concerned whether Defendants can, in the future, sustain the required level of services to classmembers.

In addition, Plaintiffs object to Defendants' "novel" proposal of using an average percentage over the last five years as the measure of substantial compliance. Plaintiffs believe this proposal contravenes the purpose of the percentage improvement principles – an approach that the Community Monitor has not endorsed. Response at 6–7.

Defendants observe that Plaintiffs have resubmitted the same opposition they made to the Court prior to the April 12, 2001 hearing and that Plaintiffs essentially have neglected to address Defendants' proposal to apply a different standard of compliance that would reflect the Court's reasoning at the April 12, 2001 hearing. Reply at 1–2. Defendants again assert that the objectives measured by Continuous Improvement "are often vague or ambiguous and incorporate individual judgment and interpretation." *Id.* at 3. Defendants believe that Plaintiffs exaggerate when they assert that as many as 25% of class members in the SE region fail to receive required services, particularly in view of the fact that only about 32 classmembers reside in this region. Of the 32 classmembers, "only eleven comprise the sample evaluated by the CPR." *Id.* at 4. Thus, according to Defendants, it simply cannot be true that many classmembers are being deprived of essential benefits.

**Discussion**

If accurate that there are only 32 classmembers in the Southeast region, 11 of whom make up the CPR sample, it is unfathomable why, over the past 16 years, Defendants have not been able to meet the requirements of the JSD's ¶¶ 32 and 35 C. Defendants have shown somewhat steady progress over the past four years, but they have not attained the required goal of 80% compliance in any of those years, and accordingly, have not achieved compliance for three consecutive years.[4] They must do both consistent with the requirements of the JSD's ¶ 32. After all, the JSD is the parties' stipulated agreement.

The Court is unpersuaded by Defendants' argument that its rulings at the April 12, 2001 hearing are now law of the case that must be applied in resolving subsequent motions for disengagement. During the 4/12/01 hearing, the Court heard oral argument on a number of different motions for partial disengagement. 4/12/01 Hearing transcript. At no time during the hearing did the Court indicate that its rulings and reasoning were to be applied to decide future motions for partial disengagement. Nor did the Court state that its rulings supplanted the parties' stipulated agreements set out in the JSD.

Moreover, the motions before the Court 15 years ago concerned different JSD paragraphs, percentage goals, and underlying facts. In addition, the question of substantial compliance was evaluated in terms of a very short span of years (1997 to 2001) in contrast to the subsequent 15 years. And, while the Court granted partial disengagement as to some obligations, it did so based on the specific data before it. *See* Hearing transcript at 13 (granting motion where

---

[4] The JSD ¶ 32 does not specify that Defendants must attain a specific increase of services for three *consecutive* years, and, instead, discusses improvements of services for "each of three years." This may be due to the parties' thinking in 1997 (when they agreed on the terms of the JSD), that Defendants would meet the required goals in the next three years. Perhaps no one envisioned this case continuing for another 20 years. The Court concludes that it makes sense, at this point, for Defendants to achieve the stated goal for three consecutive years, especially in view of issues of sustainability.

Defendants showed that, despite a drop off, they had significantly exceeded the stated goal of 45%); and, *id.* at 25 (granting motion where Defendants showed a dramatic improvement above the 80% goal followed by numbers that were just below the goal in two other years). Thus, in both instances where the Court granted the motions, Defendants had exceeded the goals during the pertinent time frame. And, under those circumstances, the Court found that for the years when Defendants narrowly missed the goal, their performance was sufficient for disengagement. *See id.* at 25 (finding that since Defendants had "substantially maintained that level thereafter, even though it may be slightly below the goal, that still comprises compliance.")

The same facts are not presently before the Court. From 1997 to 2014, Defendants have only sustained an increase in the disputed services to classmembers for a four-year period between 2011 to 2014, when they attained percentages of 63%, 73%, 77%, and 73% respectively. Motion at 6 (graph). Defendants did not reach the 80% goal in any of the four years. Moreover, the 15-year span of time reflects some significant drops in services to classmembers, i.e., 100% in 1999 to 62% in 2000, 94% in 2007 to 63% in 2008, 88% in 2010 to 63% in 2011. These types of inconsistent results raise concerns. Even if the Court were to be guided by its reasoning at the April 2001 hearing, it is convinced that it would reach the same result as it does today with respect to the present Motion.

Because Defendants have not demonstrated sustained, substantial compliance of their obligations set out in ¶ 35 C Southeast Region of the JSD in accordance with the JSD's requirements at ¶¶ 32 and 33, the Court will deny Defendants' request to disengage the ¶ 35 C obligations.[5]

---

[5] The Court assumes that when Defendants can properly support a renewed request to partially disengage the ¶ 35 C obligations, they will use the procedure now in place where the Jackson Compliance Administrator makes an initial determination regarding satisfaction of particular disengagement criteria.

IT IS THEREFORE ORDERED that DEFENDANTS' OPPOSED MOTION AND
MEMORANDUM IN SUPPORT SEEKING PARTIAL DISENGAGEMENT OF
CONTINUOUS IMPROVEMENT (Doc. No. 2058) is DENIED as to Defendants' obligations in
in ¶ 35 C Southeast Region of the JSD, as to which the Court retains oversight.

_____
SENIOR UNITED STATES DISTRICT JUDGE