IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WALTER STEPHEN JACKSON, et al.,

    Plaintiff,

vs.                                                    Civ. No. 87-0839 JAP/KBM

LOS LUNAS CENTER FOR PERSONS
WITH DEVELOPMENTAL DISABILITIES, et al.,

    Defendants.

and

THE ARC OF NEW MEXICO,

    Intervenors,

and

MARY TERRAZAS, et al,

    Intervenors. pro se

**MEMORANDUM OPINION AND ORDER**

    On January 30, 2020, Defendants Los Lunas Center for Persons with Developmental Disabilities, et al. (Defendants) filed a MOTION TO DISENGAGE PARAGRAPH 9 OF THE SETTLEMENT AGREEMENT (Doc. 2356) (Motion). The Motion asserts that Defendants are in substantial compliance with actions delineated in paragraph 9 (¶ 9) of the parties' Settlement

1

Agreement (Doc. No. 2299-1) (SA) and asks the Court to terminate its oversight of all activities listed in ¶ 9.

On March 2, 2020, Plaintiffs Walter Stephen Jackson et al. and Intervenors The Arc of New Mexico and Mary Terrazas et al. (jointly, Plaintiffs) filed RESPONSE IN OPPOSITION BY PLAINTIFFS' AND THE ARC TO MOTION TO DISENGAGE PARAGRAPH 9 OF THE SETTLEMENT AGREEMENT (Doc. 2376) (Response). On March 18, 2020, Defendants filed a REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISENGAGE PARAGRAPH 9 OF THE SETTLEMENT AGREEMENT (Doc. 2401) (Reply). On April 2, 2020, Plaintiffs' filed PLAINTIFFS' AND THE ARC'S MOTION TO DISREGARD REPLY, DOC. NO. 2401 OR TO PERMIT FILING OF SURREPLY (Doc. 2412). The Court granted Plaintiffs' motion to file a surreply,[1] and On April 28, 2020, Plaintiffs filed SURREPLY BY PLAINTIFFS AND THE ARC, TO DEFENDANTS' REPLY, DOC NO. 2401, REGARDING DEFENDANTS' MOTION TO DISENGAGE PARAGRAPH 9, DOC. NO. 2356 (Doc. 2431).[2]

On May 12, 2020, the Court held a hearing by Zoom on the Motion.[3] At the hearing, Nancy Simmons and Peter Cubra represented the Plaintiffs. Maureen Sanders and Jacque Mader represented the Intervenors.[4] James Grubel and Taylor Rahn represented Defendants.[5] The Court concludes that Defendants have not yet demonstrated substantial compliance with ¶ 9 and will deny the Motion.

---

[1] *See* Order (Doc. 2420).
[2] Plaintiffs also filed an UNOPPOSED MOTION TO INCREASE PAGE LIMITS AND FILE PLEADINGS UNDER SEAL, REGARDING PLAINTIFFS' SURREPLY TO DEFENDANTS'MOTION TO DISENGAGE ¶ 9, DOC. NO. 2356 (Doc. 2429) which the Court will grant.
[3] United States Magistrate Judge Karen Molzen was also present at the hearing
[4] Several other attorneys of record including Ann McCartney, Tim Gardner, Robert Hanson, Stephen Schwartz, and Cathy Costanzo participated on behalf of Plaintiffs and Intervenors.
[5] Also present at the meeting on behalf of the New Mexico Department of Health (NMDOH) was Scott Doan, Daniel Lucero, Sally Karingada, and Jason Cornwell.

## THE SETTLEMENT AGREEMENT

This case focuses on the State's systems and procedures that provide care for the developmentally disabled. On June 21, 2019, the Court entered a Memorandum Opinion and Order Approving Settlement Agreement (Doc. 2304). The SA's purpose "is to identify those services, safeguards, and protections from harm that will be provided to the plaintiff class and to ensure that a durable remedy is in place when this litigation ends and this case is dismissed." SA (Doc. 2299-1) ¶ 1. The SA "replaces all existing orders of the Court and will be the sole source of Defendants' remaining obligations to class members during the Term of [the] Settlement Agreement." *Id.* ¶ 4.

Part III of the SA lists the actions Defendants must take to terminate the litigation. The action item from which Defendants seek disengagement, ¶ 9, addresses mortality review. Paragraph 9 states:

> The Defendants will conduct timely and adequate mortality reviews of deaths and take necessary remedial actions, as required by current DOH/DHI policies including DIV.DDSD.DHI.13.CPS.03 (Post-Mortality Setting Safety Check); DIV.DDSD.SHI.13.CPS.23 (Developmental Disabilities Mortality Review); and DIV.DDSD.13.GA.21 (Developmental Disabilities System Quality Improvement Committee), ¶ V.B.4 (MRC).

SA (Doc. 2299-1) ¶ 9. Paragraph 9 cites three NMDOH policies. Together the policies address the requirements for investigating and, if necessary, remediating any individual or systemic problems that may have contributed to a Jackson Class Member's (JCM) death. Policy

DIV.DDSD.SHI.13.CPS.23 (MR Policy) outlines each step after notification of a JCM's death the Mortality Review Committee (MRC) must take when conducting a mortality review.[6]

Section V of the SA, "Compliance and Disengagement," specifies that Defendants must implement all action items within 18 months of the date of the Court's final approval of the SA. *Id.* ¶ 17. Although the Court's written order of final approval was not entered until June 21, 2019, the Court gave final approval at the hearing on June 12, 2019. Eighteen months from June 12, 2019 establishes a termination date of December 12, 2020 (or midnight Friday, December 11, 2020).

The SA requires Defendants to provide specific quarterly data on the action items, with the first relevant quarter commencing on July 15, 2019. *Id.* ¶ 18. The procedure for disengaging from any action item is described in ¶ 19:

> When the Defendants believe they have substantially implemented an Action set forth in Section III of this Settlement Agreement, they will notify the Plaintiffs and Intervenor Arc. The notice will state the basis for the Defendants' belief that they have substantially implemented the Actions(s), including the facts then known supporting their claim of compliance. At any time after thirty days from this notice, the Defendants may file a motion for a finding of partial compliance and disengagement of the Action(s). If the motion is contested, the parties will request that the Court hold a hearing and enter its findings and conclusions. If the Court determines that the Defendants have complied with the Action(s) of this Settlement

---

[6] 1) An Initial Assessment and Plan which includes:
    a. IMB investigation under the IMB Intake policy
    b. DDSD Regional staff conduct a Post-Mortality Safety Check
    c. Within three days of the death, a meeting between the MRC Coordinator and Chair to determine a plan for mortality review;
2) Regional Assessment and Review at the DDSD-DHI monthly meeting;
3) Within three days of notification of the death, the MRC Coordinator must request relevant records for the timeframes established in the Initial Assessment and Plan;
4) Within 45 days of receipt of the requested documents, the MRC Coordinator must compose a summary of facts, issues, and concerns for review by the DDSD Medical Director (internal report). If approved, then the summary will be shared with the MRC;
5) The MRC Chair will review the report and determine which cases will be referred for external review (external report) ***(All JCMs are referred for external review)***;
6) Within 45 days after receipt of the entire record, the external medical reviewer will issue a report. The report should include both individual and systemic issues and include recommendations to address identified problems;
7) The MRC will review all reports, identify issues, and include recommendations for improvements;
8) The case will be closed when the MRC determines that adequate review has been completed and that final disposition can be determined.

>   Agreement, it will terminate its oversight of that Action(s). In such event, the Defendants will no longer be required to report on these Action(s) or compensate the Plaintiffs for attorney time spent monitoring such Action(s).

But disengagement from a specific action does not end the Defendants' obligations on that action. Until the SA is terminated, Defendants must continue sustained compliance with all actions. *Id.* ¶ 21.

## LEGAL STANDARD

The Motion asks the Court to find that Defendants have substantially complied with ¶ 9 of the SA. Substantial compliance is a contract doctrine meant "to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract." *Joseph A. by Wolfe v. New Mexico Dep't. of Human Servs.*, 69 F.3d 1081, 1086 (10th Cir. 1995) (citing John D. Calamari & Joseph M. Perillo, *The Law of Contracts* § 11-15 at 454 (3d ed. 1987)). When a settlement agreement identifies the steps that must be taken to meet its criteria, those steps must be met to show substantial compliance. *See Wolfe*, 69 F.3d at 1086.

Motions to disengage the action items in the SA are procedurally like motions for summary judgment. The movant has the burden to show that there is no material dispute about a material fact. *Cf.* Fed. R. Civ. P. 56(a). When applying the Rule 56 summary judgment standard, the Court examines the factual record and reasonable inferences in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). "Once the moving party has met its burden, the burden shifts back to the nonmoving party to show that there is a genuine issue of material fact." *Jensen v. Kimble*, 1 F.3d 1073, 1077 (10th Cir. 1993) (citing *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)).

## ANALYSIS

Defendants seek disengagement from ¶ 9, stating that they have substantially complied with all of its requirements. In opposition, Plaintiffs argue that Defendants' mortality review has not been timely or adequate and has failed to effectuate appropriate remedial actions.

Mortality review is a process through which NMDOH engages in a "comprehensive review of the deaths of individuals receiving services funded by [NMDOH DDSD]" to "monitor whether necessary and reasonable medical, social and psychological interventions were provided prior to death," and "to promote system wide quality improvement." Motion, MR Policy (Doc. 2356-1) ¶¶ I, III. Toward that end, ¶ 9 requires Defendants to comply with current DOH/DHI policies regarding mortality review by: 1) conducting timely reviews; 2) conducting adequate reviews; and 3) taking necessary remedial action.

The Mortality Review Committee (MRC) leads this process. "The role of the MRC is to effect system change with the goal of improving the provision of care, reducing mortality and morbidity, and promoting the provision of competent, caring services and supports funded by NMDOH-DDSD" *Id.* ¶ III. The MR Policy delineates actions that Defendants must take immediately after the death of a JCM. Certain actions, or steps, must be completed within a defined time. Plaintiffs do not dispute that for most of the steps, Defendants met the time requirements. But Plaintiffs argue that Defendants did not timely complete the MR Policy's requirement for an annual report.

The annual report summarizes and tabulates the results of the mortality reviews.[7] The MRC's findings and recommendations are submitted the Developmental Disabilities Services Quality Improvement Steering Committee (DDSQI) . . "for further action via submittal of the written annual report . . .to improve systems quality." *Id.* ¶ V.K.2.a. The MRC report is "presented annually for discussion at a meeting with the Advisory Committee on Quality. *Id.* ¶V.N "Representatives from DDSD will include the DDSD Director, the DDSD Medical Director and other DDSD staff designated by the Director." *Id.* The DDSQI Committee "reviews data and other information and directs the development of DDSD and/or DHI actions to improve the quality of services for persons with intellectual and/or developmental disabilities." *Id.* ¶ II.B. In this way, the DDSQI Committee is an important part of the mortality review's purpose to "effect system change." *Id.* § III.

After the effective date of the SA, Defendants produced two annual reports. On February 23, 2020, Defendants completed and submitted the FY 2018 Annual Report, and on April 3, 2020, Defendants completed and submitted the FY 2019 Annual Report. Plaintiffs contend that Defendants' delay of over twenty months as to FY 2018 and eight months as to FY 2019 in submitting these annual reports demonstrates a failure to substantially comply with the timeliness requirements of the MR Policy. The language of the MR Policy does not support this argument.

---

[7] The MR Policy requires an annual report "which contains aggregate, de-identified information related to the mortality review process:
    1. Age, gender, county and region of residence of the decedents[;]
    2. Type(s) of services received[;]
    3. Underlying causes of death of decedents;
    4. Service or care issues that may have contributed to the deaths;
    5. Proportion and number of expected and unexpected deaths;
    6. Proportion and number of deaths for which a preventable intervention was identified;
    7. Case disposition for death reviews;
    8. Findings regarding care issues;
    9. Recommendations made by the MRC; and
    10. Other information as requested by the DDSD Division Director."
Motion, MR Policy (Doc.2356-1) ¶ V.M.1-10.

The MR Policy does not set a deadline for the annual report; it only requires that the MRC complete and produce an annual report. On its face, the MRC's delayed production of the two annual reports does not show that Defendants have not substantially complied with ¶ 9. But, the submission of an annual report is only the first step in this part of the mortality review process.

After submission of the annual report, the MR Policy requires Defendants to hold a DDSQI meeting to discuss the annual report. Significantly, the purpose of the annual report is to provide the DDSQI with the MRC's recommendations for systemic change. Defendants have not yet held a DDSQI meeting on either annual report for FY 2018 or FY 2019.

While the MR Policy is also silent as to a period within which the DDSQI meeting will occur, it is not silent as to its purpose. Submission of the annual report and holding the meeting are means by which to evaluate current systems and to effect systemic change. These two steps are an important part of "the necessary remedial action" required by ¶ 9.

The substantial compliance doctrine requires Defendants to complete each step mandated by the SA. To disengage ¶ 9, Defendants must show evidence of substantial compliance with each component. The DDSQI annual report meeting is one such essential component. Since the effective date of the SA, Defendants have not held a DDSQI annual report meeting.

 Defendants have told the Court that the DDSQI annual report meeting will occur soon. But under the terms of the SA and the MR Policy, a planned future event is not evidence of substantial compliance. In the absence of the mandated meeting, the Court cannot find that Defendants have timely substantially complied with this requirement in ¶ 9.[8]

---

[8] Plaintiffs have made additional arguments as to Defendants' substantial compliance. Because the Court has found that Defendants have not yet substantially complied on the remediation prong, the Court finds that it is unnecessary to address those arguments at this time.

IT IS ORDERED THAT:

1. Plaintiffs' UNOPPOSED MOTION TO INCREASE PAGE LIMITS AND FILE PLEADINGS UNDER SEAL, REGARDING PLAINTIFFS' SURREPLY TO DEFENDANTS' MOTION TO DISENGAGE ¶ 9 (Doc. 2429) is GRANTED;

2. Defendants' MOTION TO DISENGAGE PARAGRAPH 9 OF THE SETTLEMENT AGREEMENT (Doc. 2356) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

.