# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

WALTER STEPHEN JACKSON, et al.,

    Plaintiff,

vs.                                             Civ. No. 87-0839 JAP/KBM

LOS LUNAS CENTER FOR PERSONS
WITH DEVELOPMENTAL DISABILITIES, et al.,

    Defendants.

and

THE ARC OF NEW MEXICO,

    Intervenors,

and

MARY TERRAZAS, et al.,

    Intervenors, *pro se*.

## MEMORANDUM OPINION AND ORDER

On December 29, 2020, Plaintiffs Walter Stephen Jackson, et al. and Intervenor The Arc of New Mexico (jointly, Plaintiffs) filed a motion seeking clarification of the Court's ruling[1] that the term "hearing" in the Settlement Agreement (SA) does not include sworn depositions or

---

[1] *See* ORDER (Doc. 2504).

1

evidentiary testimony.[2] The Court construed Plaintiffs' Motion as a motion for reconsideration and ordered Defendants Los Lunas Center for Persons with Developmental Disabilities et al. to respond. The Motion is fully briefed.[3] After considering the briefs, the Court will deny Plaintiffs' Motion.

## FACTUAL AND PROCEDURAL HISTORY

For many years, this case has been pending before this Court and the Court will not recount its extensive background. What is relevant to these proceedings is that on June 14, 2016, the Court denied Defendants' motion to dismiss based on Federal Rule of Civil Procedure (Rule) 60(b)(5).[4] Defendants appealed the Court's ruling. In January 2018, the Tenth Circuit Court of Appeals entered an opinion finding in favor of Defendants. *See Jackson v. Los Lunas Cmty. Program et al.*, 880 F.3d 1176 (10th Cir. 2018). The Tenth Circuit remanded the case to this Court to determine whether Defendants were still violating federal law and if not, whether there was a durable remedy. *Id.* at 1207. On April 2, 2018, Defendants supplemented their Rule 60(b)(5) motion. Subsequently, from April 2018 through January 2019, the parties conducted fact discovery related to the motion.

On April 17, 2019, the parties presented the Court with an initial draft of the SA and asked the Court for its preliminary approval,[5] which the Court granted on April 19, 2019.[6] On June 21,

---

[2] *See* PLAINTIFFS' AND THE ARC'S CLARIFICATION OF EXPECTED TESTIMONY BY LYN RUCKER IN RESPONSE TO DEFENDANTS' MOTION TO DISENGAGE PARAGRAPH 12 OF THE SETTLEMENT AGREEMENT [DOC. 2489] (Doc. 2505) (Motion in text, Mot. in citations).
[3] *See* DEFENDANTS' RESPONSE TO PLAINTIFFS' AND THE ARC'S CLARIFICATION OF EXPECTED TESTIMONY BY LYN RUCKER IN RESPONSE TO DEFENDANTS' MOTION TO DISENGAGE PARAGRAPH 12 OF THE SETTLEMENT AGREEMENT [DOC. 2489] (Doc. 2511) (Response) and PLAINTIFFS' AND THE ARC'S REPLY IN SUPPORT OF CLARIFICATION OF EXPECTED TESTIMONY BY LYN RUCKER IN RESPONSE TO DEFENDANTS' MOTION TO DISENGAGE PARAGRAPH 12 OF THE SETTLEMENT AGREEMENT [DOC. 2505] (Doc. 2517) (Reply).
[4] *See* MEMORANDUM OPINION AND ORDER (Doc. 2103).
[5] *See* JOINT MOTION TO PRELIMINARILY APPROVE SETTLEMENT AGREEMENT (Doc. 2289).
[6] *See* ORDER PRELIMINARILY APPROVING SETTLEMENT AGREEMENT (Doc. 2292).

2019, the Court gave final approval[7] to the SA (Doc. 2299-1). The SA delineated the final steps or action items to be taken to conclude this case. The actions are comprised of seven alphabetical sections further divided into twelve numerical paragraphs. Final approval of the SA terminated all extant consent decrees.[8] Since final approval, the parties have worked to disengage the obligations by paragraph number.

On March 26, 2020, Defendants filed a motion for a protective order, asking the Court to prevent Plaintiffs from enforcing a "set of requests for production" and a "notice of deposition" of a New Mexico (State) employee, Scott Doan, in preparation for a hearing to disengage Paragraph 11.[9] After considering the briefing and listening to oral argument on the motion, at a hearing conducted on April 10, 2020, the Court ruled that Plaintiffs could not take Scott Doan's deposition and counseled the parties to conduct a more informal discovery process.[10]

On December 10, 2020, Defendants filed a second motion seeking a protective order, this time to prevent Plaintiffs from taking the deposition of Lyn Rucker.[11] Plaintiffs asserted that Ms. Rucker's testimony was essential to support Plaintiffs' argument opposing disengagement of Paragraph 12.[12] After reviewing the fully briefed motion and the oral arguments of the parties at a hearing conducted on December 18, 2020, the Court granted the Defendants' motion for protective

---

[7] *See* MEMORANDUM OPINION AND ORDER (Doc. 2304).
[8] *See* MEMORANDUM OPINION AND ORDER (Doc. 2304) ¶ 3.
[9] *See* MOTION FOR PROTECTIVE ORDER FROM DISCOVERY (Doc. 2404).
[10] *See* ORDER SETTING NEW DEADLINES (Doc. 2420) (setting new deadlines and denying Defendants' Motion for Protective Order from Discovery as moot).
[11] *See* EMERGENCY MOTION FOR PROTECTIVE ORDER FROM DISCOVERY AND REQUEST FOR EXPEDITED HEARING (Doc. 2493).
[12] *See* RESPONSE IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER, DOC. NO. 2493, BY PLAINTIFFS AND THE ARC (Doc. 2496).

order, and again ruled that the SA did not contemplate reopening discovery for sworn depositions or evidentiary testimony.[13]

## APPLICABLE LAW

The Court may grant a motion to reconsider when it has misapprehended the facts, a party's position, or the law. *See United States v. Huff*, 782 F.3d 1221, 1224 (10th Cir. 2015). Specific situations where circumstances may warrant reconsideration include: (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice. *Servants of The Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). But a motion to reconsider "is not a second chance for the losing party to make its strongest case or to dress up arguments that previously failed." *Huff*, 782 F.3d at 1224. Further, a motion to reconsider "should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *United States v. Christy*, 739 F.3d 534, 539 (10th Cir. 2014).

## PARTIES' ARGUMENTS

In their Motion, Plaintiffs maintain that the Court misunderstood "the full scope of what Ms. Rucker would testify to with respect to Defendants' motion to disengage Paragraph 12." Mot. (Doc. 2505) at 2. In the SA, Paragraph 12 appears in Section D, Health. To disengage Paragraph 12, Defendants must show that they "provide health related services as required by [specified] DD Waiver Standards." The State does not directly offer health related services. Instead the State contracts with providers of the health related services. The State monitors these providers through a procedure called "IQR review." As the former Jackson Community Monitor, Ms. Rucker was integral in establishing the parameters of the IQR process.

---

[13] *See* ORDER (Doc. 2504).

Plaintiffs explain, Ms. Rucker will testify "how, why, and to what extent the findings of the IQR demonstrate whether Defendants have provided or failed to provide class members with the specific health-related services required by the DD Waiver Standards incorporated into paragraph 12 of the Settlement Agreement. As such, Ms. Rucker's testimony goes to the heart of the disputed issues before the Court on Defendants' Motion to Disengage paragraph 12." Reply (Doc. 517) at 2. Plaintiffs further elucidate that because Ms. Rucker will not agree to voluntarily submit an affidavit because she believes it will harm her contractual relationship as a technical advisor with the State, her sworn testimony is the only way in which Plaintiffs can present this evidence. Plaintiffs conclude that if the Court's ruling stands, Plaintiffs' procedural due process rights will be violated.

Defendants respond that Plaintiffs have not established that it is appropriate for the Court to reconsider its ruling. Defendants contend that the only "new" information Plaintiffs offer is that Ms. Rucker will not provide an affidavit under any circumstances. Moreover, it has always been Defendants' position that the SA does not anticipate testimonial evidence through depositions or at hearings. Finally, Defendants emphasize that, if permitted, Ms. Rucker's testimony would improperly venture into legal conclusions about compliance.

## ANALYSIS

The parties agreed that the Court would retain "the inherent authority to interpret, clarify, modify, or enforce this Settlement Agreement." SA (Doc. 2299-1) ¶ 20. In April 2020, and again in December 2020, relying both on the language of the SA and the intention of the parties as expressed in their briefings and arguments at the hearing on final approval, the Court orally ruled that the SA *did not* provide for "testimonial witnesses." *See* Order (2420) (documenting orders made at a status conference held on April 10, 2020 and holding that Defendants' Motion for a

protective order to prevent the Plaintiffs' attempt to depose Scott Doan (Doc. 2404) was moot"); *see also* Order (Doc. 2504) at 3 ("The Court has previously ruled that the Settlement Agreement does not provide for formal discovery and reiterates that ruling here."). Plaintiffs now seek reconsideration of that ruling.

Motions for reconsideration are appropriate only under limited circumstances. Plaintiffs do not identify which circumstances they believe control this Motion. But Plaintiffs' arguments seem to fall into three categories: 1) the Court has misinterpreted the terms of the SA; 2) the Court has misunderstood the Plaintiffs' legal position; and 3) if the Court does not reconsider its ruling that the SA does not provide for evidentiary hearings, Plaintiffs' due process rights will be harmed.

**1.       *The SA does not contemplate evidentiary hearings***

The SA is a contract. "Issues involving the formation, construction and enforceability of a settlement agreement are resolved by applying state contract law." *United States v. McCall*, 253 F.3d 1211, 1215 (10th Cir. 2000). "The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive." *Cont'l Potash, Inc. v. Freeport-McMoran, Inc.,* 858 P.2d 66, 80 (1993). "Whether ambiguity exists is a question of law." *Envtl. Control, Inc. v. City of Santa Fe*, 38 P.3d 891, 896 (N.M. 2002).

The SA does not define the term "hearing." In the case of contested motions, as here, the SA provides for a "hearing" at which the Court may "enter its findings and conclusions." *See* SA (Doc. 2299-1) ¶¶ 19, 21. Although the SA does not use the term "informal," the SA does textually delineate procedures for ongoing *informal* discovery. Throughout the process of disengagement, Plaintiffs monitor Defendants through the exchange of documents and quarterly meetings with United States Magistrate Judge Karen B. Molzen. But the SA contains no mechanism for formal

discovery. The Court has concluded that the term "hearing," as used in the SA, unambiguously means an opportunity for the parties to orally argue the points presented in their briefs with exhibits obtained through informal discovery. The Court has also permitted Plaintiffs to submit affidavits with expert opinions. Yet, Plaintiffs have persisted in their claim that "hearing" necessitates either a more formal hearing with testimony and/or sworn depositions.

In their memorandum seeking final approval of the SA the parties stated that the intent behind the SA was to avoid the time and expense of a trial.[14] To accept Plaintiffs' contention that the parties intended the term "hearing" to mean hearings with depositions or evidentiary testimony would be to assume that the parties contemplated the possibility of seven (7) mini trials. Such a requirement would negate the intended savings in expense or time. Moreover, the fact that the SA's language delineates a very specific procedure for informal discovery prior to the disengagement process dispels any ambiguity on that point as to what the parties intended.

## 2. *New evidence*

Plaintiffs argue that the Court misunderstood the scope of Ms. Rucker's testimony. According to Plaintiffs, Ms. Rucker's testimony is the best evidence to substantiate Plaintiffs' position that Defendants have not met the requirements of Paragraph 12. Defendants read this assertion to mean that Plaintiffs did not know at the time of the hearing that Ms. Rucker would

---

[14] *See* JOINT MEMORANDUM IN SUPPORT OF FINAL APPROVAL OF THE PARTIES' SETTLEMENT AGREEMENT (Doc. 2300) ("The risk and expense of continuing to litigate the Rule 60(b) Motion supports approval of the Agreement. First, the cost of further litigation was projected to be substantial. A four-week evidentiary hearing was scheduled to begin in the fall of 2019. Although significant litigation expenses already had been incurred, the costs of preparing for the hearing, the hearing itself, and the post-hearing development of findings of fact and conclusion of law—both in terms of Plaintiffs' and Defendants' counsel's time and the costs of both sides' experts—could have involved a cost in the millions of dollars, especially if either side appealed from the decision of the Court on the merits of Defendants' Rule 60(b) Motion."). In its opinion approving the SA, the Court also raised concerns about the protracted expenses of litigation. *See* MEMORANDUM OPINION AND ORDER (Doc. 2304) (observing "Significantly, the expense of this lawsuit also impacts the public interest. ... These expenditures have been detrimental to the State's interest and have raised federalism concerns by restricting the State's ability to make decisions about its budget.").

not, under any circumstances submit an affidavit. Accordingly, Defendants counter that Ms. Rucker's refusal to testify is not "new." Defendants' arguments find support in the prior proceedings.

At the December 18, 2020 hearing and in their briefing, Plaintiffs stated clearly that Ms. Rucker would not provide an affidavit. While the Plaintiffs may not have stated it as forcefully as they do now, they based their explanation regarding Ms. Rucker's refusal on the same reasons they offer in this Motion—Ms. Rucker's desire not to harm her contractual working relationship with the State. Nor does Plaintiffs' allegation that they were "clarifying" a misapprehension as to what Ms. Rucker would testify provide a "new" basis for the Court to permit her testimony. In their briefing, Plaintiffs plainly stated that Ms. Rucker would testify not only about the meaning of the IQR scores but how the scores were determined and applied. *See* RESPONSE IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER, DOC. NO. 2493 BY PLAINTIFFS AND THE ARC (Doc. 2496) at 7 (Ms. Rucker will testify about the "substantive meaning of the IQR scores" and "her knowledge and expertise are unique in this regard.").

Finally, the Court observes that Plaintiffs are not without other resources. The Court has permitted the introduction of expert witness opinions through affidavits. While it is regrettable that Ms. Rucker refuses to cooperate with Plaintiffs and submit an affidavit, Plaintiffs may look to other experts who are willing to cooperate. While the Court sympathizes with Plaintiffs' dilemma, a reluctant witness or an attorney's inability to obtain a perfect witness' cooperation is a ubiquitous problem that does not offer a basis for this Court's reconsideration.

3. *Manifest injustice*

Twice the Court has ruled that the SA does not contemplate testimony or depositions and disengagement proceedings. Now, on this third go round, Plaintiff have introduced a due process

argument. According to Plaintiffs, the proceedings will violate the Plaintiffs' due process rights if the Court does not permit Ms. Rucker to give live testimony through either a deposition or at the hearing. A failure to raise an issue at the onset of a dispute, waives the argument. *See Paraclete*, 204 F.3d at 1012 (a motion for reconsideration is "not appropriate to revisit issues already addressed or advance arguments that could have been raised on prior briefing.") (further citation omitted).

Even if Plaintiffs had properly raised this procedural due process argument, there is no basis for it. Plaintiffs have not identified the substantive due process interest on which they rest this asserted right. The parties contractually delineated the procedures for disengagement and dismissal. By agreement, the parties also granted the Court the absolute authority to "interpret, modify, clarify, or enforce" the SA. SA (Doc. 2299-1) ¶ 20 Accordingly, the Court has found that the parties' contract is unambiguous and does not include formal discovery, depositions, or evidentiary testimony.

## CONCLUSION

Plaintiffs have not presented the Court with any valid grounds for reconsideration: the Court has not misunderstood the law; there are no new facts that impact the Court's previous ruling; and Plaintiffs have no legal or factual basis for their procedural due process argument.

IT IS ORDERED: Plaintiffs' and the Arc's Clarification of Expected Testimony by Lyn Rucker in Response to Defendants' Motion to Disengage Paragraph 12 of the Settlement Agreement [Doc. 2489] (Doc. 2505) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE

9